100 So.2d 411 (1958)
Marie S. BROACH, Intervenor, Appellant,
v.
Ruth YOUNG, Plaintiff, and
T.G. Muzzall et al., Defendants, Appellees.
Supreme Court of Florida.
February 14, 1958.
Saunders, Curtis, Ginestra & Gore, Fort Lauderdale, for appellant.
McCune, Hiaasen, Kelley & Crum, Fort Lauderdale, for appellee.
PER CURIAM.
Affirmed.
TERRELL, C.J., and THOMAS, HOBSON, and ROBERTS, JJ., concur.
DREW, THORNAL and O'CONNELL, JJ., dissent.
*412 DREW, Justice (dissenting).
The trial court granted certiorari and quashed an order of the Board of Adjustment of Fort Lauderdale which denied a permit to construct a gasoline service station, holding:
"The defendant Board denied the application for a permit to construct a service station allegedly `in conformity with the zoning Section 47-14, paragraph b-2 of the Code of Ordinances'. The Section of the ordinance in question does not prescribe rules and conditions sufficiently definite for the guidance of the Board in the execution of their discretionary power. Therefore, the reason given by the Board for denying the application is held to be insufficient in law to warrant the action taken."[1]
The conclusion reached by the learned chancellor above quoted is amply supported by decisions of this Court.[2]
After the property owner had instituted certiorari proceedings in the trial court to test the legality of the action of the Board of Adjustment in refusing the permit, and before the entry of the order (final decree) under review here, the governing body of the city enacted an amendment to its zoning ordinance with reference to the construction of gasoline service stations, one provision of which forbade such construction within a prescribed distance of, among other things, a public playground.[3] The subject property is within such prohibited area.
In the order under review the trial court disposed of this ordinance with the following observation:
"Another party has filed a petition for leave to intervene alleging Ordinance No. C-1164 of the City of Fort Lauderdale as a defense to this cause. The said ordinance was enacted subsequent to the application for a permit and to the issuance of the writ [of certiorari], and is, therefore, not available as a defense. (Emphasis supplied.)
In support of the conclusion that the subsequently enacted ordinance was not available as a defense, appellees rely almost wholly upon our opinions in the case of Aiken v. E.B. Davis, Inc., 1932, 106 Fla. 675, 143 So. 658 and Harris v. State ex rel. Wester, 1947, 159 Fla. 195, 31 So.2d 264.
The Aiken case did not hold that any subsequently enacted ordinance could not be a defense in any case. It held that the ordinance in that case was not available as a defense in that case. This conclusion is quite obvious when the opinions in the case are analysed in the light of the chancellor's findings. Davis applied for a permit to construct a filling station on a parcel of ground he said he owned and which was clearly available under the law for such use. At the time of the application the city had no zoning ordinance, although the record *413 showed a general plan had been agreed on by the Town Council. The city refused the permit because, so it said, the applicant did not own the land. Davis then applied for and secured an alternative writ of mandamus to compel the issuance of such permit or to show cause why it should not issue. After the service of the alternative writ, the city, finding that it had no legal support for its refusal, then enacted a zoning ordinance restricting Davis' land to residential use as an emergency measure. Parenthetically it is a little difficult to understand how an ordinance of this kind, covering a whole city  as it did  and involving so many complex considerations, could fall within the spirit of the law allowing passage of certain ordinances as emergency measures. This, apparently, was what motivated the learned chancellor in that case for, in his order, he said:
"`Viewing this record and considering the nature, area and population of the municipality, I am of the opinion that, in so far as it affects relator and the particular land in question, the municipality acted unreasonably and arbitrarily. The actions of the municipality are sufficient to overcome the presumption that the ordinance  as it affects relator  was in any way prompted by consideration of public safety, health, welfare or morals.'" 106 Fla. 677, 143 So. 658, 659.
Moreover, Mr. Justice Davis so construed the chancellor's findings for, speaking for the court, he said, "the final adoption of the [emergency] ordinance * * * is in contemplation of law an attempted judicial decree by the legislative power of the city against the then existing rights of the relator, and therefore that such ordinance as applied to relator, is unreasonable and arbitrary, as held by the circuit judge." 106 Fla. 677, 143 So. 658. What the chancellor decided and what this Court decided was that the action of the city was taken  not in good faith and in the interest of the city's welfare  but in bad faith and solely for the purpose of thwarting the court and supporting its admittedly unlawful act in denying the permit. The trial court and this Court were meticulously careful to point out that the decision was limited to facts in that case and to Davis' land. The Harris case also involved an emergency ordinance and the conclusion is obvious that both the trial court and this Court in that case concluded, as they did in the Aiken case, that the city authorities had not acted in good faith.
The great weight of authority in this country is to the effect that an application for a building permit, made before a zoning ordinance becomes effective does not  in itself  vest in the applicant a right to a use excluded by the Ordinance.[4] The same rule would apply to an amendment to a zoning ordinance if passed and adopted in good faith and in the interest of the general welfare of the city and pursuant to and in accordance with lawful authority.
In recognition of this principle of law the annotation in 169 A.L.R. 584 states, "* * * it is generally acknowledged that a change in the law pending an application for a permit or license is operative as to such application, and that the law as changed, rather than as it existed at the time the application was filed, determines whether the permit or license should be granted". It is then observed, by the annotator, "If, however, action on the application is unreasonably refused or delayed until after the change has become effective, or the issuing officer arbitrarily fails to perform a ministerial duty to issue the license or permit promptly on an application which conforms to the law at the time of filing, the courts have held that the law at the time of filing of the application controls."[5] (Emphasis supplied.)
*414 The Aiken and Harris cases place this Court with those that hold that if the application is unreasonably refused or delayed and the subsequent ordinance enacted in bad faith, the law at the time of the application should be applied. Application of this rule, however, must rest on a finding that such is the case. No such finding has been made in this case, the trial court having assumed, erroneously, that under no circumstances could such subsequently enacted ordinance be considered.
The cause should be reversed and remanded to the chancellor for a determination of the undecided question, that is, whether the subsequent ordinance was conceived and enacted in bad faith or unreasonably for the purpose of defeating the land owner's rights under the law at the time of the application; and upon such determination for the entry of an appropriate decree in accordance with the views here expressed.
THORNAL and O'CONNELL, JJ., concur.
NOTES
[1] The ordinance in effect when the application for permit was made provides:

"(b-2) Permits for a gasoline or oil filling station may be granted by the board of adjustment after hearing as provided for in this section in the business district B-1, B-2, B-3 under certain conditions, provided they do not conflict with the provisions of subsection (b-1) above, and such permits shall be granted then, only after the board of adjustment has found that it is an appropriate case, subject to appropriate conditions, and which will safeguard the public health, safety and general welfare, and that the granting of such permit shall be in harmony with the general purposes and intent of the zoning regulations in the district for which the permit is being applied for."
[2] See Hartnett v. Austin, Fla. 1956, 93 So.2d 86, for a general discussion of these principles. More directly in point is the recent opinion of this Court in North Bay Village v. Blackwell, Fla. 1956, 88 So.2d 524.
[3] This amendment to the zoning ordinance [Ordinance No. C-1164] was regularly enacted, became effective prior to the decree appealed from and was brought into the proceedings in the trial court by an affected property owner who was allowed to intervene by stipulation of the parties.
[4] McQuillan Municipal Corporations, 3d Ed., Vol. 8 (Zoning) Sec. 25.155, 25.156; 58 Am.Jur. Section 240. (pages 1066-1067). Also see Annotation 169 A.L.R. 584.
[5] See and compare Sharrow v. City of Dania, Fla. 1955, 83 So.2d 274.