## Gage Zoning Case.

Argued November 16, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Robert B. Greer,* with him *Robert W. Beatty,* and *Butler, Beatty, Greer & Johnson,* for appellant.

*Robert E. Porter,* with him *Greenwell, Porter, Smaltz & Royal,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, January 16, 1961:

The appellant in this case is attempting to restrain the passing of a way of private habitation which, for better or for worse, is now rapidly disappearing from the face of residential America. Hardly anyone is building any more the large, ornate, magnificent mansions which for three quarters of a century preceding the outbreak of World War II were the inevitable manifestation of great wealth, affluence and high industrial or even governmental position. The locus in quo in this litigation has to do with just that kind of an estate.

Robert K. Cassatt owned at the turn of the 20th century an 150-acre tract in what is now Radnor Township, Delaware County. Here he built a sumptuous residential palace. In 1928 he built for his son another imposing home, smaller than the paternal domicile, but

imposing in its own right. Constructed of finely finished stone, two and a half stories high, containing a total of 25 rooms, including 7 bedrooms and 7 baths, with sweeping staircases and landscaped yards, it now stands about 100 feet from the Wyldhaven Road, from which it is screened by wide-spreading trees and flowering shrubbery.

With the advent of high and ever-heightening taxes, elevated costs for servants, gardeners, valets and other domestic help, and with the growing tendency to less lavish domiciliary display of great wealth, the Cassatt estate began to undergo considerable change. A tract of ten acres was carved out of the estate and, with the original mansion, was sold to a Presbyterian Society as a home for aged persons. Several cottages sprang up around the mansion, the entire curtilage holding accommodations for sixty persons.

In 1951 the Cassatt, Jr. mansion, with eight acres of land, was sold to Dr. Chas. A. Rankin, who in 1957 sold it and five acres to a Mr. and Mrs. Hauserman, who in turn conveyed it to Joseph S. Gage and Georgie A. Gage,* who intend to turn the property into a convalescent home.

The remainder of the original Cassatt estate was purchased by the Plymouth Woods Corporation, which plans to build on the land 100 houses, selling from $35,000 to $55,000 each. Plymouth Woods seeks to prevent the Gages from using their property for a convalescent home. Plymouth sees in this commercialization of the handsome residential showpiece a depressing of surrounding real estate value. It proceeds on the theory, which is whimsical but scarcely contro-

---

\* When this litigation first began, the Gages had only signed an agreement to buy the property here in controversy, but since then, settlement for the property was completed and they are now in possession.

vertible, that many people are affected by the nature of their environment and that they feel rich if they live close to rich people, and poor if a shack obtrudes on the residential horizon.

Thus, Plymouth wishes to hold unchanged in all its aristocratic beauty the Cassatt, Jr. mansion of old. The Gages, on the other hand, argue they have a right to operate a convalescent home on the property they have purchased, regardless of how Plymouth feels about it. Further, that Plymouth exaggerates the supposed dire effects on the neighborhood if a convalescent home is in its midst. That is what this case is about.

Radnor Township is made up practically entirely of residential properties. Nevertheless, the zoning ordinance enacted to preserve this residential complexion of the municipality, does permit for institutional purposes detached dwellings "when authorized as a special exception by the Board of Adjustment." In consequence, as one witness testified: "there are a number of institutional properties around, such as the Presbyterian Village, and the property that is now owned by Bryn Mawr College, which is the Rhodes property, and the Baptist Home; and there is the St. Edmund's Home for Crippled Children, and the Convent of the Sisters of the Immaculate Heart of Mary, and the Sisters of St. Francis."

Apparently being reassured by the presence of these institutional properties in the Township, the Gages applied to the zoning board of Radnor Township for a special exception to use the Cassatt mansion and its five acres of land for a convalescent home. The board of adjustment refused the exception, stating: ". . . the Board feels that not enough effort has been expended to produce a home owner for this property in question."

But here the board misapprehended the whole purpose of a special exception. There is no require-

ment that a home owner, in order to obtain a special exception, must show that he is confronted with the impossibility of selling his property to a certain type of purchaser. Unnecessary hardship is not one of the ingredients going into a special exception. As stated in *Novello v. Zoning Board of Adjustment*, 384 Pa. 294: ". . . the applicant was not obliged, in order to obtain a certificate from the Board, to establish, as in the case of a variance, that an unnecessary hardship would result if a certificate were refused."

In the case at bar the Gages were not entering into the convalescent home enterprise because they could not do anything else with their property. The use of their property for a convalescent home was a first intention and they were entitled to have the Board consider it on that basis.

The Gages appealed from the decision of the board of adjustment to the Court of Common Pleas of Delaware County. The Plymouth Woods Corporation intervened, as did also Dr. and Mrs. Chas. A. Rankin, the penultimate predecessors in title of the mansion and who had themselves built a home on the three acres they had retained. The court took additional testimony, reviewed that presented before the board of adjustment, and allowed the special exception.

The Plymouth Woods Corporation then appealed to this Court. It argues that "the Court below failed to give effect to the provisions of the ordinance and the law applicable thereto." This argument is not sustained by the record. Section 301 of the Radnor Township Zoning Ordinance specifically permits, when authorized, as special exceptions: "Educational, religious, philanthropic use, hospital or sanitarium, including dormitory of an educational institution."

A court of common pleas, in passing on the evidence it hears, may reverse the Board only for abuse of discretion or mistake of law. (*Imperial Asphalt Case,*

359 Pa. 402). This Court, then, in passing on the decision of the court of common pleas, decides whether the court of common pleas abused its discretion. (*Volpe Appeal*, 384 Pa. 374.) A review of all the testimony and consideration of all the factors involved in this controversy lead us to the inevitable conclusion that the court below disposed of the issue in strict conformity with law and justice.

Article I, §100 of the zoning ordinance provides: "This Ordinance is enacted for the following purposes: To promote the health, safety, morals, and general welfare of the inhabitants of the Township of Radnor. . ."

We do not see how the operation of a convalescent home on the Gage property can possibly adversely affect "the health, safety, morals and general welfare of the inhabitants" of Radnor Township.

The appellant contends that one of the objects of the zoning ordinance was to conserve the value of the existing properties in the township. We do not so read the ordinance, but if it could be shown that in some degree a new or old house in the immediate vicinity of the Gages' property would now sell for less because of the convalescent home's proximity, we would still say that that would not be an adequate reason for prohibiting the use decreed by the lower court. The care, maintenance and cure of those who are ill is as much a matter of concern for organized society as the building and maintenance of homes for those who are well and able bodied. The citizenship of a person who becomes ill loses none of its vigor because of the debility of the body to which it is attached. Radnor Township, in appreciation of the duty it owes to ailing mankind, made specific provision for hospitals and sanitoria.

Nor does the record show that the operation of the convalescent home would in any way disturb neighboring property-owners from the full enjoyment of

their properties. The physical setting of the Gage property, its geographical separation from the highway, and its arboreal isolation, make it a little community unto itself, unaffected by the residences in the area and, at the same time, undisturbing to those residences and its inhabitants.

In allowing the special exception the court below laid down restrictions which will protect even the most fastidious of neighbors. The Gages may not keep more than twenty patients at a time; alcoholic, mental or senile patients will not be admitted; and no changes may be made in the exterior of the building and no additional structures may be built without approval of the township authorities.

Turning the pages of the transcript of testimony, one cannot but feel that the objections to the Gage nursing home were more imaginary than real. For instance, the appellant argues that the employees, tradesmen and visitors to the Gage convalescent home would increase traffic hazard. The trial judge pointed out that Wyldhaven Road is wider than most of the roads in the township and trenchantly observed that: "If the house were used for five residences the total traffic would be about the same. There is ample off-street parking. We dismiss the traffic hazard as a valid objection."

The other objections raised by the appellant were excellently disposed of in the opinion filed in the court below and its final order is affirmed.