## Markey, Appellant, *v.* Zoning Board of Adjustment.

Argued November 13, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and KEIM, JJ.

*Anthony J. Mazullo, Jr.,* with him *Frank J. Montemuro, Jr.,* for appellants.

*Levy Anderson,* First Deputy City Solicitor, with him *Carl K. Zucker* and *Matthew W. Bullock, Jr.,* Assistant City Solicitors, *James L. Stern,* Deputy City Solicitor, and *David Berger,* City Solicitor, for appellee.

*Reuben E. Cohen,* and *Cohen, Shapiro and Cohen,* for intervenor-appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 8, 1963:

The Northeast Convalescent Home, Inc. owns 152,-400 square feet (approximately 3½ acres), of land, zoned "A Residential", in the northeast section of Philadelphia where it proposes to erect a convalescent home with an area for accessory parking. It applied to the Philadelphia Zoning Board of Adjustment for appropriate certificates which in due time were granted. For ease in geographical description the land of the applicants was known as Lot No. 1 and Lot No. 2, the intention of the owners being to erect the building for the home on Lot No. 1 and to use Lot No. 2 for the accessory parking.

In issuing the certificates, the board stated: "Provided that Lot No. 2 be used for parking only and that if there is ever a deviation from this use, permit is to be revoked."

Joseph E. Markey, Eva Schutz and the Birdwood Farms' Civic Association, representing landowners occupying land in the immediate vicinity of the controverted property, opposing the granting of the certifi-

cates, appealed from the board's decision to the Court of Common Pleas No. 6 of Philadelphia County, which affirmed the action of the board. They then appealed to this Court.

Section 14-203(3)(a) of the Philadelphia Zoning Code provides: "(a) Occupied Area. Not more than 30% of the lot area shall be occupied by buildings."

The appellants argue that since the area of Lot No. 1 measures 38,700 square feet, and the proposed building would cover 20,570 square feet, the building would thereby exceed by 20% the space allowable under the code. This argument is based on the supposition that Lots Nos. 1 and 2 are separate terrestrial entities. In point of legal and physical fact, they are not. They are owned by the same proprietor, they are contiguous, they are being used for the same purpose. In the *Fisher Building Permit Case,* 355 Pa. 364, this Court held that a proprietor of several units of land, each in successive juxtaposition to another, may develop them into a single lot and they will be accepted as such in matters involving zoning: "In its adjudication of July 29, 1946, the court below found, and there is ample competent evidence to sustain such finding, that the several lots conveyed to the Fishers, to which they had title at the time the township secretary issued the building permit on April 22, 1946, and to which they still hold title, are contiguous and can be considered as one parcel of land; and that this entire tract appellees developed, used and fenced as one property. The learned court committed no error in holding, under the facts here presented, that the barn constructed partly on Lot No. 9 and partly on the lot to the north thereof was appurtenant to the dwelling house erected upon Lot No. 7."

In the case at bar, the parking (assigned to Lot No. 2) is strictly a facility for the convalescent home and is therefore an integral part of the home opera-

tion. The reference to the individualized parcels as Lots No. 1 and 2 was obviously one of convenience and was not attended with such legal significance as to bar the logical, visible and palpable conclusion that we are here dealing with only one plot of land.

Nor does the fact that two separate certificates were issued, one for the building and another for the accessory parking change the indicated conclusion. Even if both the building and the parking were located on Lot No. 1, two certificates would still have been necessary.

The appellants argue that when the named paper street Springfield Road is opened, Lot No. 1 will be cut into two and that the ground north of that thoroughfare may not be considered in computing the total area assignable to the building. If and when Springfield Road will be opened is a matter for speculation but in view of our affirmance that the two alleged lots are really one, the speculation becomes only academic and therefore cannot affect our decision.

In further opposition to the granting of the zoning certificates the appellants contend that the proposed convalescent home offends against the criteria set forth in Sec. 14-1802 of the code with regard to improvements. Criterion 3(c)(.3) permits improvements dedicated to the "promotion of health and general welfare". Appellants argue that the building of a convalescent home in this area will decrease the value of real estate in its immediate vicinity. This very question was considered in the *Gage Zoning Case,* 402 Pa. 244, 249, where we said: "The appellant contends that one of the objects of the zoning ordinance was to conserve the value of the existing properties in the township. We do not so read the ordinance, but if it could be shown that in some degree a new or old house in the immediate vicinity of the Gages' property would now sell for less because of the convalescent home's proximity, we

would still say that that would not be an adequate reason for prohibiting the use decreed by the lower court. The care, maintenance and cure of those who are ill is as much a matter of concern for organized society as the building and maintenance of homes for those who are well and able bodied. The citizenship of a person who becomes ill loses none of its vigor because of the debility of the body to which it is attached. Radnor Township, in appreciation of the duty it owes to ailing mankind, made specific provision for hospitals and sanitoria."

The facts in *Hass v. Zoning Board,* 403 Pa. 155, closely resemble those before us in this appeal. That case also had to do with a convalescent home with accessory parking in an area zoned "A" residential. There the protestants also objected to the convalescent home. Their objections were based not so much on the fact that they believed their legal rights were being violated as the fact that they did not like to have a convalescent home around. We said that such an attitude did not constitute a valid objection: "It is obvious that the complainants objected to the convalescent home simply because it *is* a convalescent home and not because there would be or could be anything about such an institution which would deprive them of their rights. The picture the complainants painted of a convalescent home would more easily answer the description of a combined lunatic asylum, home for the incurables and refuge for victims of a plague than the establishment intended by the applicant for the zoning board certificate."

The record shows that the appellants in this case feared that the proposed convalescent home might give residence to alcoholics, drug addicts, seniles and persons with mental illness. Melancholy as is the observation that unfortunates falling within those categories should be regarded as pariahs, the appellants have no

reason to believe that their sensitivities will be offended in this respect because the type of home here in contemplation will not provide for the accommodation of the classifications objected to.

All other criteria having been met, the order of the court below is affirmed.