# Bishop of the Diocese of Altoona-Johnstown v. State College Borough

*S. Paul Mazza*, for appellant.

*Robert K. Kistler*, of *Miller, Kistler, Lee & Campbell*, for appellee.

*John L. Geiser*, of *Litke, Gettig, Flood & Geiser*, for intervenors.

CAMPBELL, P. J., February 14, 1969.—This case presents three questions for the court's determination:

1. May a borough legally require an owner of two or more adjacent lots to submit an application for approval to consolidate them prior to their use for a single purpose?

2. If so, may a borough refuse the owner the right to consolidate the lots into one?

3. If so, did the borough abuse its discretion in refusing to do so in this case?

Many years ago, an original developer in State College Borough divided a block of land fronting on West Fairmount Avenue into six lots. The land is bounded

on the east by Fraser Street, on the west by Burrowes Street, and on the rear or north by an alley. Church, appellant (hereinafter called "church"), now owns the easterly five lots fronting approximately 282 feet on Fairmount Avenue and extending back 150 feet to an alley. The remaining lot fronting 60 feet on Fairmount Avenue and being adjacent to Burrowes Street is owned by a party not involved in this litigation and is occupied by a residence. The area is zoned R4 residential, permitting apartments. In the immediate neighborhood are erected an elementary school, two churches and a number of single-family and two-family dwellings of considerable age.

Section 1202-4 of ordinance no. 559 of borough, appellee (hereinafter called "borough") provides as follows:

"No rearrangement of recorded lot lines shall be approved without recommendations of the Planning Commission and approval of the Borough Council. Upon such approval, such change shall be duly recorded in the offices of Record in both the Borough and the County."

Borough also has a subdivision ordinance no. 520 which requires all subdivision plans to be approved by the borough and which provides, inter alia, as follows:

"For any replotting or resubdivision of land, the same procedure, rules and regulations shall apply as prescribed herein for an original subdivision, except that the Planning Commission may waive all or part of the requirements when the proposed change is made in accordance with recommendations by the Planning Commission for a replot of a previously approved subdivision."

The subdivision ordinance no. 520 was adopted January 21, 1957, and the zoning ordinance no. 559 was approved September 13, 1961.

Church, desiring to use all lots for one project, applied for permission to replot its five lots into one lot without internal lines which, if approved, would create two lots in the block in question: one 282 feet by 150 feet, and the other 60 feet by 150 feet. It is conceded that borough would have the right to disapprove of this lot layout if it were included in a subdivision application. Church first made application for approval to the planning commission, then to borough council, then again to council with a request for reconsideration, and finally to the board of adjustment. It was refused in each instance without explicit reasons being assigned therefor. Although not material here, considerable local interest and opposition was engendered when it became known that church was contemplating the erection of a high-rise apartment, which is not prohibited by the present zoning laws. Although studies have been made, the borough council has not adopted a comprehensive plan for the orderly development of the borough.

The matter is now before this court and the parties have stipulated and agreed to withdraw all technical and procedural objections and have the matter adjudicated on the merits as though the application were governed by the Pennsylvania Municipalities Planning Code which became effective January 1, 1969. We approach this problem strictly on the merits as governed by the provisions of the aforesaid code.

Borough contends that its ordinance no. 520, adopted January 21, 1957, cited as the "State College Subdivision Ordinance" is applicable here. We respectfully disagree. A careful reading of this ordinance indicates that it applies generally to a new subdivision or the development of land not heretofore zoned or subdivided. It sets up a comprehensive and detailed procedure involving the filing of preliminary plans and specifying in detail the contents of a gen-

eral development plan, all of which would be quite inappropriate to the consolidation or subdivision of isolated lots which have long existed in older portions of the borough. The past actions of borough council are inconsistent with its present contention. Numerous consolidations of lots have been permitted by the borough, and we believe it safe to assume that in no case have they applied the requirements of the subdivision ordinance before permitting the consolidation of two or more lots into one. We note also that the borough zoning ordinance, which was adopted subsequent to the subdivision ordinance, contains a specific provision regarding the rearrangement of recorded lot lines. If the subdivision ordinance applied to cases of this sort, there would have been no need to include this provision in the subsequently enacted zoning ordinance.

We now turn our attention to the Pennsylvania Municipalities Planning Code which became effective January 1, 1969. It is contended that article V thereof, entitled "Subdivision and Land Development" covers the instant situation. Again, we must disagree for the reason heretofore assigned with respect to borough's subdivision ordinance. The new planning code makes substantial changes on procedural matters which we believe to be of great value. We now hold that the new planning code makes no substantive change in the law of Pennsylvania as it applies to the consolidation of two or more lots owned by the same person and to be used in one project. Section 107(11) of the new code defines land development as:

". . . (i) the improvement of one or more contiguous lots, tracts or parcels of land for any purpose involving (a) a group of two or more buildings, or (b) the division or allocation of land between or among two or more existing or prospective occupants by means of, or for the purpose of streets, common

areas, leaseholds, building groups or other features; (ii) a division of land into lots for the purpose of conveying such lots singly or in groups to any person, partnership or corporation for the purpose of the erection of buildings by such person, partnership or corporation": Act No. 247 of July 31, 1968, 53 PS §10107(11).

We find nothing contained in the new code giving a planning agency or borough council the authority to refuse a single landowner, of contiguous lots the right to treat them as one tract.

### MAY AN OWNER BE REQUIRED TO SUBMIT AN APPLICATION FOR CONSOLIDATION OF LOTS?

The provision of the zoning ordinance requiring an applicant to submit a request for the rearrangement of lot lines and providing for their recordation is a proper legislative enactment and constitutionally valid. There are many sound reasons for this requirement. For example, it may aid the borough in planning for future services and utility connections. The requirement to request the change in lot lines imposes no extraordinary burden on the lot owner. We answer question no. 1 in the affirmative.

### MAY BOROUGH REFUSE TO APPROVE AN APPLICATION BY A SINGLE OWNER TO CONSOLIDATE TWO OR MORE LOTS FOR USE AS ONE UNIT?

Under the circumstances of this case, we hold that neither the planning agency nor the borough may refuse a single owner from considering and utilizing two or more contiguous lots as one unit for his development thereof: Fisher Building Permit Case, 355 Pa. 364 (1946); Markey v. Zoning Board of Adjustment, 409 Pa. 430 (1963).

The ordinance involved provides no general criteria or guidelines upon which an approval or disapproval may be based. Permission in one case and refusal in another creates obvious discrimination. Likewise, borough has not adopted a comprehensive plan nor related the question of consolidation of isolated lot transactions to the harmonious and intelligent planning and development of the borough. When this is done, a different conclusion may be warranted. This conclusion should cause no hardship on borough since council has never on any prior occasion refused any application similar to the one considered herein.

Of course, any use of the land subsequent to consolidation is strictly bound by and subject to the requirements of the then existing zoning and building ordinances and codes.

### REASONS FOR DISAPPROVAL

In view of the court's holding on question no. 2, there is no need for a consideration of the third question. However, we feel it important to make various comments with respect thereto. We have examined the July 29, 1968, minutes of the borough council and find not a single valid reason for refusing church's request. It would appear that council was besieged by protestants with respect to the possible construction of a high-rise apartment. It must be admitted that such an apartment was perfectly legal and its construction required no variance or exceptions from existing ordinances. To assign that as a reason for the refusal of church's application is indicative of an arbitrary and capricious action. The court is in sympathy with the difficult position of council when logical reasoning may be influenced with the desire to satisfy concerned vocal groups. If council desires to limit height regulations and population density, it should forthrightly do so and not use this device to interfere

with a property owner's legal use of his land. The fact still remains that an injustice has been done to a property owner who desires to improve his property in a way which legally complies in every respect to the ordinances of the borough and the laws of this state.

ORDER

And now, February 14, 1969, church is directed to prepare and file with the appropriate borough and county offices for recordation a map showing the desired lot consolidation, if it has not already done so, and thereafter it is authorized to proceed with the development of the area in conformity with all applicable zoning and building codes.