## Sameric Corporation of Ivy Ridge v. Zoning Board of Adjustment

*Donald M. Moser,* for appellant.
*Walter Rabin,* for contra.

TAKIFF, J., May 17, 1974.—This matter arises out of the decision of the zoning board of adjustment sustaining the appeal of the Valley View Civic Association, intervenor herein, from the issuance of zoning and building permits for construction of a motion picture theater at premises 7110 Ridge Avenue, Philadelphia.

The site is part of one of three contiguous parcels of land (hereafter referred to as parcels A, B and C) located at the southwest corner of Ridge Avenue and Domino Lane. The zoning and development history of the entire tract is relevant to our consideration.

On September 27, 1956, city council enacted bill no. 371 which rezoned parcel A, the northernmost portion of the entirety, fronting on Ridge Avenue for approximately 298 feet and extending approximately 490 feet in depth along Domino Lane, from "A-R" and "C-R" residential to "Shopping Center II." Thereafter, on June 30, 1960, city council enacted bill no. 89 which changed the zoning classification of parcel B, the

parcel of land immediately contiguous to parcel A to the south, fronting on Ridge Avenue for the distance of 189 feet, from "A-R" and "C-R" residential to "Shopping Center II." By virtue of the adoption of the Philadelphia Zoning Ordinance on October 1, 1962, section 14-101, et seq., both tracts were designated as "Area Shopping Center" pursuant to the change of nomenclature of "Shopping Center II" to "Area Shopping Center."

Parcel C, the locus of the present dispute is, in substantial part (except for a parcel having a frontage of 163 feet on Ridge Avenue and a depth of 150 feet, carved out of the entirety and separately owned), contiguous to and south of parcels A and B. It contains a frontage on Ridge Avenue of approximately 108 feet and a maximum depth of 483 feet. On September 23, 1965, city council enacted bill no. 1039A, which rezoned this tract from "R-5" residential to "C-2" commercial. Pursuant to that reclassification, the then owner of parcel C, Abe Greenberg, applied for building permits to construct 56 apartments and five retail stores on that site. In connection with his application, Greenberg entered into and duly filed a restrictive covenant with the city planning commission providing, inter alia, that the buildings to be erected on this site (parcel C) would be 72 feet in width and no more than two stories in height. Only the retail stores contemplated were subsequently constructed.

On January 9, 1968, Ivy Ridge Investment Corporation, then owner of parcels A and B, acquired parcel C, thus vesting title to the three contiguous tracts of land in a single owner. Contemplating the erection of a drive-in restaurant and other retail stores, Ivy Ridge Investment Corporation thereafter requested City Council to change the zoning classification of parcel C from "C-2" commercial to "ASC" Area shop-

ping center, which was effectuated by passage of Bill No. 869 on March 13, 1969. As previously noted, parcel C alone contains a frontage of 108 feet on Ridge Avenue and a total area, as claimed by the objectors, of 65,862 square feet, or of 84,889 square feet, as claimed by the owner. The minimum requirements under the zoning code for an area shopping center, if this property would be regarded as separate and isolated from the contiguous property, are a street frontage of 200 feet and an area of 80,000 square feet: Section 14-309(3)(a), Philadelphia Zoning Code.

In its review of the proposed zoning change, the city planning commission, approving the proposal, viewed "the effect of this request would be to extend the boundaries of that (existing area) shopping center.

On January 18, 1972, the owner obtained zoning and use permits administratively issued, "over the counter," from the Permit Issuance Section of the Department of Licenses and Inspections for the demolition of certain of the stores erected subsequent to the enactment of Bill No. 869 and the erection of a one-story motion picture theater; a use which is permitted as of right on land zoned "Area Shopping Center." See Philadelphia Code of General Ordinances, as amended, Title 14, §309(1)(f). The plans submitted with the application clearly show that the proposed width of the theater was 76 feet, 9 inches, which patently exceeds the restriction to a building width of 72 feet which was filed when parcel C was in a separate ownership and was the subject of a zoning change converting it from "R-5" residential to "C-2" commercial classification. The plot plan submitted in support of the application dealt with parcels A, B and C as a single entity in reference to gross building area (84,889 square feet), total lot area (332,267 square feet) and parking accommodations for all segments as an

entirety; ratios which clearly satisfy the requirements of the zoning code if it be regarded as a single, integrated area shopping center.

Applicant demolished two retail stores on the premises and commenced construction of the theater pursuant to a building permit applied for on April 5, 1972, and issued on June 2, 1972. In December 1972, protestants brought a complaint in equity, seeking to restrain applicant from further construction. Preliminary objections were sustained and the complaint dismissed. Thereafter, on January 4, 1973, the Civic Association appealed to the zoning board of adjustment from the issuance of the zoning and use permits by the Department of Licenses and Inspections. Construction was approximately two-thirds completed at that time. After hearing, the board sustained the appeal and ordered that the permits previously issued be revoked. The matter is presently before the court on writ of certiorari from the decision of the board.

The scope of this court's review is limited. Since no additional testimony was taken by the court, the sole issue is whether the zoning board clearly abused its discretion or committed an error of law in revoking the use permits granted by the Department of Licenses and Inspections: Marple Township Appeal, 440 Pa. 508, 269 A. 2d 699 (1970); Lower Merion Township v. Enokay, Inc., 427 Pa. 128, 233 A. 2d 883 (1967); Gaudenzia, Inc. v. Zoning Board of Adjustment, 4 Comm. Ct. 355, 287 A. 2d 698 (1972).

The Philadelphia Zoning Code, Title 14, §14-1705, provides that appeals to the zoning board of adjustment "shall be taken within a reasonable time after the date of the decision." Rule No. 1 of the Rules and Regulations of the Zoning Board provide for a 10-day period during which an appeal may be taken.

Permits for demolition of an existing retail store and authorizing construction of the motion picture theater were issued by the Permit Issuance Section of the Department of Licenses and Inspections on January 18, 1972. Demolition and construction were commenced some time in the early part of 1972. Protestants took no action until December 5, 1972, when they filed a complaint in equity seeking to enjoin the construction. Not until January 4, 1973, nearly one year after the issuance of the permits they sought to challenge, did protestants appeal to the zoning board. At that time, construction of the theater was approximately two-thirds complete.

It is obvious that the zoning board permitted protestants to appeal in spite of their noncompliance with the board's rules. Although these rules are not mandatory and are subject to liberal interpretation where justice so requires, it appears to the court that allowance of such an appeal nearly one year after the decision to be challenged, with construction work approximately two-thirds complete, so far exceeds a liberal interpretation of the rules that it constitutes an abuse of discretion by the board.

The decision of the zoning board is clearly predicated upon its conclusion that three essentially contiguous but separate shopping centers were created, as evidenced in its finding of fact no. 14 which reads:

"14. The legal effect and intent of the four councilmanic bills was to create three separate shopping centers and that the creation of Shopping Center C (subject premises) was conditional upon its sole use for drive-in restaurant and small retail stores and that Mr. Mitkus was in error in his understanding to the contrary."

This is factually inaccurate and has no support in

the record. Although the plans, which were the basis for the proposed zoning change of parcel C, contemplated construction of a drive-in restaurant and other retail stores, at no time did city council place any restrictions on the property in question. In addition, if city council actually intended to create three separate "shopping centers," it could not legally designate parcel C as an area shopping center without taking into consideration the use and size of parcels A and B, since the zoning code requires a minimum frontage of 200 feet for such classification. To the contrary, the intention to view the ordinance as purposed to extend the boundaries of the existing area shopping center is demonstrated in the declaration of approval made by the city planning commission.

The law is clear. An owner of contiguous property may have the entirety considered in determining legal compliance. A fountain-head case is Fisher Building Permit Case, 355 Pa. 364, 499 A. 2d 626 (1946). There, plaintiff, whose dwelling was located on one parcel of land, applied for and was refused a permit to build a barn on a contiguous parcel of land under an ordinance which required that a barn must be appurtenant to a dwelling already erected upon the same property. The court reversed, holding that the lots were contiguous and could be considered as a single parcel of land, viewing the several contiguous parcels, separately acquired, as one property.

In Markey v. Zoning Board of Adjustment, 409 Pa. 430, 187 A. 2d 175 (1963), plaintiff proposed construction of a nursing home and an area for accessory parking to be built on two contiguous but separately identified lots. The applicable zoning provision required that "not more than 30% of the lot area shall be occupied by buildings." Protestants appealed to the court from the decision of the zoning board granting the neces-

sary permits, contending, inter alia, that the building would occupy greater than 50 percent of the area of lot No. 1. The court affirmed the decision of the board, holding that the two lots, which were contiguous, under the same ownership, and being used for the same purpose, were not "separate terrestrial entities." See also Del Guercio v. Zoning Board of Adjustment, 409 Pa. 457, 187 A. 2d 165 (1963).

Protestants attempt to distinguish these cases on the ground that they concerned situations where the use of one parcel was servient to the dominant use of the other parcel. This view is unduly restrictive. The court believes these cases stand for the broader proposition that:

"[A] proprietor of several units of land, each in successive juxtaposition to another, may develop them into a single lot and they will be accepted as such in matters involving zoning": Markey v. Zoning Board of Adjustment, 409 Pa. 430, at 432.

For this reason, parcels A, B and C, contiguous and under one ownership, may be developed as a single area shopping center and the characteristics of frontage, parking and improved area of parcels A and B must be reckoned with in determining whether the improvements sought for parcel C meet the requirements of law.

Mr. John Mitkus, Acting Executive Director of the Planning Commission, gave testimony which indcated that the practice of the planning commission is in accordance with the law as heretofore stated:

"The Planning Commission says as long as it's one ownership, you can continue to have the domino aspect. L & I must apply the parking as to one, and they must meet the requirements of the Code. It's always been our understanding it's one shopping center."

The zoning board rejected this testimony without showing any basis factually or legally for its conclusion that the legal effect of the various councilmanic bills was to create "three separate shopping centers." Its decision, reached without any support in either fact or law, constituted an abuse of discretion.

The narrow issue on appeal before the zoning board was whether or not the permits were validly issued by the Permit Issuance Section of the Department of Licenses and Inspections. What the board *actually* did in this matter was to far exceed its power by reviewing the historical zoning reclassifications of the segments of the property by city council and superimposing its own restriction on a legally sanctioned use of land zoned area shopping center. At no time did city council place restrictions or limitations on permissible uses of the tract other than to designate it, by successive enactments, an area shopping center. Neither the zoning board nor this court now has the power to limit or restrict those legislative enactments.

There is no question but that a motion picture theater is a lawful use under an area shopping center zoning classification. The permits were validly issued by the Permit Issuance Section of L & I; refusal to grant the permits would have been an error of law.

Protestants introduced evidence before the board concerning the effect the motion picture theater would have on traffic conditions in the area. The board concluded:

"Conclusion of Law No. 5. That the demolition of the small retail stores and the erection of the 805 seat theatre on the subject premises constituted an overuse of the subject premises overburdening parking facilities and contributed to traffic congestion existing in the immediate area of the subject property even prior to the construction of the said theatre."

Evidence in support of this conclusion, while it

might have been relevant to a determination on an application seeking variance or special exception, was irrelevant and incompetent to the issue before the board, i.e., whether permits for a permissible use were validly issued. The board was not called upon to determine whether the proposed use was adverse to the public health, safety, welfare and morals; that issue had long been passed in the conclusion of the planning commission and city council when the zoning ordinances were enacted. Parenthetically, it may be noted that an increase in traffic, standing alone, does not warrant the board in refusing a land-owner an unequivocally authorized use of his property. See Archbishop O'Hara's Appeal, 389 Pa. 35, 131 A. 2d 364 (1957); Lower Merion Twp. v. Enokay, Inc., 427 Pa. 128 (1967).

The fact that there may be an outstanding restrictive covenant relating to parcel C entered into with respect to an earlier zoning classification is irrelevant to the writ of certiorari presently before the court. In Michener Appeal, 382 Pa. 401, 115 A. 2d 367 (1955), the Supreme Court of Pennsylvania quoted with approval from Bassett on Zoning, Ch. IX, pages 184-87:

" 'Contracts between property owners or between a municipality and a property owner should not enter into the enforcement of zoning regulations.' "

The remedy for breach of a restrictive covenant lies in an action to enforce the covenant by those entitled to enforce it. It has no relevance to the limited scope of this review.

The decision of the zoning board of adjustment revoking the zoning and use permit issued by the Department of Licenses & Inspections to the Ivy Ridge Investment Corporation is reversed and it is ordered that the said permit be and is hereby reinstated.