Lower Merion Township, Appellant, *v.*
Enokay, Inc.
Neighborhood Club of Bala-Cynwyd, Appellant,
*v.* Enokay, Inc..

Argued January 12, 1967. Before BELL, C. J., MUS-MANNO, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused October 26, 1967.

*Lewis H. Van Dusen, Jr.,* with him *Thomas E. Wood, Robert S. Ryan,* and *Drinker, Biddle & Reath,* for township, appellant.

*Francis E. Shields,* with him *William R. Deasey,* for appellant.

*Cassin W. Craig,* with him *Fred B. Creamer, David M. Jordan,* and *Wisler, Pearlstine, Talone & Gerber,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, September 26, 1967:

Enokay, Inc., is the owner of 6.057 acres of land situate in Lower Merion Township, Montgomery County. The land fronts on Conshohocken State Road, St. Asaph's Road, and Llanberris Road. Enokay's sole stockholder is the Federation of Jewish Agencies of Greater Philadelphia, of which the Young Men's and Young Women's Hebrew Association is a constituent agency. The property involved is zoned partly R-7 and partly R-3, under the township zoning ordinance.

The zoning ordinance permits the erection and use of buildings of the type sought to be erected by appellees in areas zoned as the land here involved is zoned, when applications for such are authorized by the board of adjustment as a special exception. Appellees applied for a special exception which was denied by the zoning board of adjustment. An appeal to the Court of Common Pleas of Montgomery County resulted in a reversal of the board of adjustment, and we granted appellants' petition, under Rule 68½, for leave to appeal.

The board of adjustment's denial of appellees' application was based on two factors: first, that the proposed structure and its use would be injurious to the health, safety, welfare and morals of the community; and second, that appellees' proposed parking facilities were inadequate and violative of the governing provisions of the zoning ordinance. The court of common pleas determined that the board had abused its discre-

tion in finding that the proposed use would be injurious to the health, safety, welfare and morals of the community. The court further held that the board had misinterpreted the applicable provisions of the zoning ordinance, relative to parking facilities, and that adequate provisions for parking were provided.

A petitioner who seeks a special exception must show that the proposed use is allowable under the terms of the ordinance which permits special exceptions. *Temple Univ. v. Zon. Bd. of Adj.*, 414 Pa. 191, 199 A. 2d 415 (1964) ; *Rieder Appeal*, 410 Pa. 420, 188 A. 2d 756 (1963) ; *Phi Lambda Theta Zoning Case*, 400 Pa. 60, 161 A. 2d 144 (1960). In the instant case, there is no serious dispute that the proposed use is allowable under the terms of the ordinance. Having shown that the use is allowable, there is no burden on the petitioner to show that the use would not damage the health, safety and morals of the community. On the contrary, the burden is on the protestants to show that such use would damage the health, safety and morals of the community. *Temple Univ. v. Zon. Bd. of Adj.*, supra; *Good Fellowship Amb. Club's Appeal*, 406 Pa. 465, 178 A. 2d 578 (1962) ; *Archbishop O'Hara's Appeal*, 389 Pa. 35, 131 A. 2d 587 (1957).

Since the court below took no additional testimony, the scope of our review is limited to determining whether the board of adjustment abused its discretion or committed an error of law. *Chersky v. Bd. of Adj.*, 426 Pa. 33, 231 A. 2d 757 (1967) ; *Cleaver v. Board of Adjustment*, 414 Pa. 367, 200 A. 2d 408 (1964), and cases cited therein. As previously stated, the court below found that the board had both abused its discretion and committed an error of law. We agree.

The board concluded that the health, safety, welfare and morals of the community would suffer if the proposed use were permitted, because there would be a generation of new traffic which the road system in

the area could not bear. The board stated: ". . . the road system adjacent to the property already is critically overcrowded, and that the proposed YM & YWHA would cause a serious additional traffic burden."

The Law of Pennsylvania is clear that an increase in traffic, standing alone, does not constitute a sufficient reason to refuse a property owner the legitimate use of his land. As we said in *Archbishop O'Hara's Appeal,* supra, at page 54: "The anticipated increase in traffic must be of such character that it bears a *substantial* relation to the health and safety of the community. A prevision of the effect of such an increase in traffic must indicate that not only is there a likelihood but a high degree of probability that it will affect the safety and health of the community, and such prevision must be based on evidence sufficient for the purpose. Until such strong degree of probability is evidenced by legally sufficient testimony no court should act in such a way as to deprive a landowner of the otherwise legitimate use of his land." (Emphasis in original) Without rehearsing all of the evidence introduced on the issue of traffic, we conclude that the court below properly held that the protestants had not met their burden of proving that the increase in traffic created a high degree of probability of danger to the safety and health of the community. This conclusion is buttressed by the uncontradicted testimony of the applicants that the proposed use would have its greatest effect on traffic during off-peak hours, rather than during those periods of the day when traffic conditions are at their worst.

As to the question of the parking requirements of the zoning ordinance, the ordinance, provides, in its pertinent part, as follows: "7. Auditoria, churches, schools, stadia, or any other place of public or private assembly. At least one parking space for each 5 seats or for each 50 square feet of floor area where fixed seat-

ing is not installed." The court below and the board of adjustment were in agreement that the parking requirements of the ordinance were not applicable to the gross floor area of the building, but only to those areas within the building used for public or private assembly. It was in determining what areas of the building constitute places of assembly that the board and the court below came to a parting of the ways. They were in agreement that the corridors, washrooms, stairways, storage and mechanical installations, which occupy 22,140 square feet of the building, and the locker rooms, weight lifting room, exercise room, squash court, handball courts and offices, which occupy another 16,408 square feet, could be excluded from the parking requirements, inasmuch as they were not places of assembly. The auditorium, which had 500 fixed seats, clearly required 100 parking spaces, and the gymnasium, with 250 fixed seats, clearly required 50 parking spaces. The board and the court below were in further agreement that the areas designated as the large meeting room, gallery and lecture room, two Golden Age rooms, the nursery school, five club rooms, the lounge, the two youth lounges and the lobby, all being places of assembly, were subject to the parking requirements of the ordinance, based upon the square footage of their respective floor areas. By calculating the number of parking spaces required for each area, the court below arrived at a total required number of parking spaces of 440.*  Inasmuch as the appellees had submitted a proposal providing 475 parking spaces, the

---

* Appellant, Lower Merion Township's, brief properly points out that the court's total should have been 448 spaces instead of 440. The difference arises by reason of the fact that the court required only 10 spaces for the lobby, which contains 900 square feet. Applying the ordinance standard of one space for each 50 square feet, the court should have required 18 spaces for this area.

court below concluded that the proposal was within the requirements of the ordinance.

The board had concluded that the ordinance required 786 parking spaces. The difference is explained by the inclusion by the board of 16,850 additional square feet of the proposed structure made up of two health club rooms, a main and instruction swimming pool, two craft shops and a youth gameroom. We agree with the conclusion of the court below that these enumerated areas should not be included in the areas which constitute places of assembly. There can be no rational basis for including, for example, a youth gameroom or a health club room, and excluding a weight lifting room or an exercise room. The court below did not, as appellants contend, substitute its judgment for that of the board or the framers of the ordinance; rather, the court below found that the board had erred in applying the parking provisions of the ordinance to areas of the building to which those provisions had no application.

We note, in passing, that although the provisions of the ordinance require only 448 parking spaces, the order of the court below requires 475 parking spaces, leaving a margin which will be helpful in alleviating any parking problems which might occur. In addition, the order of the court below provides, as a condition to the granting of the special exception, a requirement that only one spectator event may be held in the building at any one time, and that no two such events may be held on the same day, unless there is a two hour lapse in time between the termination of the first activity and the commencement of the second. This additional precaution should go a long way in alleviating any traffic or parking problems which may arise from the construction and use of the proposed structure.

Order affirmed.

Mr. Justice JONES took no part in the consideration or decision of this case.