Bruce HARRELL et al.,

v.

HAMBLEN COUNTY QUARTERLY COURT and Hamblen County Planning Commission.

Court of Appeals of Tennessee, Eastern Section.

March 26, 1975.

Certiorari Denied by Supreme Court Aug. 18, 1975.

John F. Dugger, Morristown, for appellant.

A. Benjamin Strand, Jr., Dandridge, for intervening petitioners.

Anderson & Anderson, and William O. Foutch, Jr., Morristown, for appellees.

OPINION

SANDERS, Judge.

The Hamblen County Quarterly Court and the Hamblen County Planning Commission have appealed from a decree of the Chancery Court holding that they acted arbitrarily in denying the Petitioners a permit to construct a mobile home park.

The Petitioners, Bruce Harrell, Frank Harrell, Johnny McCrary and Ralph P. Masengill, Sr., are the owners of a tract of land containing approximately 20 acres, most of which is located in the Second Civil District of Hamblen County, with a small portion located in Jefferson County.

In October, 1973, the Petitioners submitted a preliminary plan to the Hamblen County Planning Commission to develop the property into a mobile home park. At this meeting the Planning Commission voted to preliminarily approve the plan but advised the Petitioners that before final approval could be given they must comply with the provisions of an ordinance which had been recently passed by the Hamblen County Quarterly Court governing mobile home parks.

The ordinance in question is an ordinance passed by the Quarterly Court in pursuance of Chapter 350 of the Private Acts of 1968 as amended by Chapter 38 of the Private Acts of 1973. The ordinance provides regulations and standards for mobile home parks located in Hamblen County outside the city limits of Morristown. The ordinance outlines some 15 provisions which must be met in order to qualify for a mobile home park permit. These items include size of lots, width of streets, setback requirements, garbage facilities, availability of water supply, sewage and septic tank requirements, parking space for automobiles, etc.

On November 20, 1973, the Petitioners appeared before the Planning Commission with their final plans for the mobile home park and requested a permit. The record indicates that the Petitioners had met or exceeded the minimum requirements set forth in the ordinance. However, there were in attendance at this meeting a large number of people who owned homes in subdivisions adjacent to or in the vicinity of the proposed mobile home park who were opposed to the Planning Commission's issuing a permit. Although those appearing in opposition to the issuance of the permit advanced several theories for their opposition, such as overcrowding the schools in the area, increasing traffic congestion, increase in crime, possible sanitation hazards, etc., no competent proof was offered to support any of these theories. The main thrust of the opponents was that they lived in good-class, highly restricted subdivisions and the location of a mobile home park nearby would substantially decrease the value of their properties.

At the conclusion of the hearing the Commission, by a vote of four to two, denied Petitioners' permit. Each member of the

Commission was asked to give the reason for his vote before voting. The following appears in the minutes of that meeting:

"Mr. Duggan Bradley stated, we do not have zoning in the county, though we have taken some action tonight hopefully giving the County Court a chance to zone the county. Mr. Bradley then stated, that if the property was zoned residential and the developers ask for rezoning for a trailer park he would have to vote no, but as Mr. Dugger said, the Planning Commission's power is to regulate subdivisions and mobile home parks, and it is not for the Planning Commission to decide whether the mobile home park would create a nuisance, that is a court action. The Planning Commission determines whether the developer meets the regulations, and if the developer does not meet the regulations the Planning Commission still has action, but the developers do have a plan that is more then adequate, it has surpassed the regulations in every area and because they have met and passed the regulations, Mr. Bradley stated he must vote yes.

"Mr. James Helton voted yes for the same reasons. Mr. Helton stated the people in this district in question were the people who elected him. They elected him to do what he thought was right and he had studied the plan and it meets all the requirements. Mr. Helton stated he did not like the proposed park either and if he lived in the area in question he would not like the proposal but he would still have to vote yes because the plan meets all the regulations.

"Mr. Wilbur Purkey voted no for the residents present at the meeting. Mr. Purkey stated he was sure Mr. Harrell and his people would do exactly as they say but his vote was still no.

"Mr. Ayers Porter, Jr. voted no. Mr. Porter stated that he represented the County Quarterly Court and he did not have any apologies for any one. He was voting the way he saw fit.

"Mr. Willis Foshie voted no. Mr. Foshie stated that not knowing the effect on the safety, morals, and convience [sic] of the residents this plan is going to have, his vote was no.

"Mr. William South stated the Commissioners were not computers and if they were, they could be programmed for regulations. Mr. South stated the regulations were not to be broken but he based his vote on the statement in the regulations, that the purpose of the ordinance which the Planning Commission goes by is to promote public health, safety, morals, convenience, order, prosperity, and general welfare of the public, by regulation of location and development of mobile home parks.

"Mr. South stated he found no fault with Mr. Harrell's development but he feels if he voted for the plan he would not be promoting the health, safety, etc. so he also voted no."

Following the action of the Planning Commission, the Petitioners appealed to the Quarterly County Court sitting as a zoning board of appeals. In substance, the same proof was offered before the Quarterly Court as had been offered before the Planning Commission. The record indicates that there were approximately 150 residents of the county present at the hearing in opposition to the issuance of the permit.

At the conclusion of the hearing the members of the Quarterly Court voted seven to six in favor of upholding the ruling of the Planning Commission. No reason was given by any of the members for voting against the issuance of the permit, but a statement made by one of the members immediately before the vote was taken we think is pertinent. "Mr. Thompson: If we don't consider these people down there, how is the state going to consider us when we are against the prison?"

 This court will take judicial notice of the fact that the State of Tennessee had proposed the construction of a state prison in Hamblen County which had been strongly opposed by many citizens of that county, resulting in extensive litigation.

Following the action of the Quarterly Court, the Petitioners filed a petition for a writ of certiorari in the Chancery Court of Hamblen County. The case was heard by The Honorable Thomas G. Hull, Chancellor, sitting by interchange for Chancellor William H. Inman.

A number of home owners and residents living in the vicinity of the proposed mobile home park were permitted by the Chancellor to file intervening petitions in opposition to the issuance of the permit. The Chancellor considered the evidence presented before the Planning Commission and the Hamblen County Quarterly Court but heard testimony of additional witnesses, most of which was cumulative.

He found the issues in favor of the Petitioners and found that the Planning Commission and the Quarterly Court had acted arbitrarily in denying the permit and directed the Planning Commission to issue one.

The Planning Commission and the Quarterly Court have appealed and assigned the action of the Court as error.

The Chancellor filed a memorandum opinion in which he said, in part: "The Court finds and holds that it is substantially agreed to by the parties that the plaintiffs' application to construct a mobile home park met or exceeded all the requirements of the mobile home ordinance which was the only law in effect in Hamblen County at that time concerning mobile home parks.

"The Court permitted owners of property in close proximity to the mobile home park site to file an intervening petition and to be heard, and the thrust of their opposition to the proposed park was that it would create an undue burden on the school system, the garbage collection, the traffic on the highways, and generally be disruptive and damaging to the value of their homes if it were permitted to be constructed. The Court, after considering this matter believes that the plaintiffs have complied with the rules and regulations of the mobile home park ordinance and should, therefore, be granted a permit to construct same and that the

action of the Planning Commission and the Quarterly County Court was arbitrary and contrary to the laws and rules and regulations in force and effect at the time the application was denied."

We concur with the Chancellor in his findings of fact. We think it is abundantly clear from reading this record that the Petitioners had fully complied with the requirements of the ordinance governing standards for mobile home parks in Hamblen County.

It is interesting to note that none of the witnesses who testified suggested that the Petitioners had failed to meet the standards set forth in the ordinance and none of those who voted against issuing the permit gave this as a reason for so voting.

Section I of the Mobile Park Ordinance provides as follows: "Purpose and Scope— The purpose of this ordinance and resolution is to promote the public health, safety, morals, convenience, order, prosperity and general welfare by the regulation of the location of and the development of mobile home parks and trailer courts in that area of Hamblen County outside the city limits of the City of Morristown."

The Appellants argue that this provision of the ordinance gives the Planning Commission the discretion to deny a permit at any place where, in their judgment, the general welfare of the community might be affected.

We cannot agree. Section I is the preamble of the ordinance. It is well settled in this state that the preamble of a statute or ordinance may be looked to in determining its construction but it is not a part of the controlling provisions of the ordinance. *Memphis Street Railway Co. v. Byrne*, 119 Tenn. 278, 104 S.W. 460; *Queener v. Magnet Mills*, 179 Tenn. 416, 167 S.W.2d 1; *City of Kingsport v. Jones*, 196 Tenn. 544, 268 S.W.2d 576.

It is obvious that the Planning Commission and the Quarterly Court denied the permit to the Petitioners because of the objection of the adjacent property owners,

which they were without authority to do. 101 C.J.S. Zoning, § 224.

Although these adjacent property owners may be justifiably concerned as to the adverse effect that may be had on the value of their property, this does not permit an administrative agency to deny an adjoining property owner the right to use his property for lawful purposes and not in violation of zoning or restrictions. *Application of Garden City Jewish Center*, 2 Misc.2d 1009, 155 N.Y.S.2d 523; *Congregation Committee, North Fort Worth Congregation, Jehovah's Witnesses v. City Council of Halton City*, Texas Civ.App., 287 S.W.2d 700.

"The grant or refusal of a permit is to a certain extent within the sound discretion of the board or official authorized to use it, but the discretion must be exercised reasonably, and if an applicant meets all of the requirements of the zoning regulations and there is no valid ground for denial of the application, the permit should be issued." 101 C.J.S., *supra*.

The Law of Zoning and Planning, Chapter 55, Section 3, says:

"So long as the application is in order and the proposed use of the property complies with applicable municipal ordinances or, where although not complying, the premises has a vested non-conforming status, the applicant is entitled to a permit, and it is the duty of the administrative officer to issue him one."

Also within Chapter 55 at pages 55–4, 55–5, of the above treatise, it says:

"The issuing of permits has often been held to be an administrative or ministerial act and the person charged with the duty of issuing permits must follow literally the provisions of the ordinance. Although, in a New York case, the court said: 'Undoubtedly, the right to grant or withhold a permit carries with it an exercise of discretion in the discharge of a public duty,' it added that '. . . such discretion must be exercised reasonably and upon a proper factual founda-

tion.' Discretion can enter only where the language of the ordinance necessitates administrative interpretation. In a New York case, the court said:

"'It has been held that the administrative official charged with the duty of issuing permits is bound by the provision of the ordinance pursuant to which he purports to act, *Larkin Co. v. Schwab*, 242 N.Y. 330, 151 N.E. 637; *Brooklyn Parking Corp. v. Cannella*, 193 Misc. 811, 85 N.Y.S.2d 389, and a refusal to issue a permit upon a ground other than one which comes within the scope of the building inspector's authority as spelled out by the ordinance constitutes an arbitrary act. *Carpenter v. Grab*, 257 App. Div. 860, 12 N.Y.S.2d 906.

"'Ordinarily the issuance of a building permit is purely an administrative act, and the person charged with its issuance must follow the literal provisions of the zoning ordinance. He is circumscribed by their provisions and absent some cogent reason based on the wording in the ordinance, the granting of a permit is required as a matter of course. The granting or withholding of a permit is not a matter of arbitrary discretion. If the applicant complies with the requirements of the ordinance, he is entitled to his permit. *Beckmann v. Talbot*, 278 N.Y. 146, 15 N.E.2d 556; *Carpenter v. Grab*, supra; *People ex rel. Corn Hill Realty Co. v. Stroebel*, 209 N.Y. 434, 103 N.E. 735; McQuillin, *Municipal Corporation*, 3d Ed., Sec. 26.206 and cases cited. This being so, the respondents must be guided by provisions of the ordinance set forth above.'"

The assignments of error are overruled.

The decree of the Chancellor is affirmed and the case is remanded to the Chancery Court of Hamblen County for the enforcement of its decree.

The cost of this appeal is taxed to the Appellants.

PARROTT, P. J. (E. S.), and GODDARD, J., concur.