James E. Kopelman v. The Zoning Hearing Board of the City of New Kensington and Rivercrest Civic Association. Rivercrest Civic Association, Appellant.

Argued November 17, 1980, before Judges WILKIN-SON, JR., CRAIG and PALLADINO, sitting as a panel of three.

R. E. Valasek, for appellant.

John N. Scales, with him David T. Cofer, Scales and Shaw, for appellee.

OPINION BY JUDGE CRAIG, December 12, 1980:

Appellants, as objectors in this zoning case, appeal from the Court of Common Pleas of Westmoreland County, which reversed the Zoning Hearing Board of the City of New Kensington (board) and ordered the issuance of a zoning certificate to appellee James E. Kopelman as requested in his application for a special exception under the New Kensington zoning ordinance.

Kopelman sought to construct two restaurants on a parcel of about two acres[1] in an area zoned "R-4 Transitional Residential District"; under the ordinance "Eating Places" are allowed in R-4 districts under stated special exception standards. On the tract adjacent to Kopelman's is a restaurant previously authorized by special exception. The remaining perimeter of Kopelman's property adjoins public streets and single-family dwellings.

The board denied Kopelman's application. Without taking new evidence, the common pleas court reversed the board because of legal error in the board's interpretation of Section 307 of the ordinance, the special exception provision which permits an "Eating Place" in R-4 districts "upon lots adjoining a legally permitted use other than a one or two-family dwelling."[2]

The initial issue in this case is whether the adjoining special exception restaurant use is such a "legally permitted use" as Section 307 requires to qualify a subject lot for a special exception. We agree with the common pleas court that it is, and thus that the board erred in refusing the requested special exception on that ground.

As Judge LOUGHRAN stated:

[The ordinance] does not define permitted use or special exception. However, . . . it must be noted that the ordinance clearly states that

---

[1] Kopelman has planned to divide the tract functionally, devoting one acre to one of the enterprises and the remaining acre to the other.

[2] Section 307 provides in pertinent part:

Hotels and Motels, Gift Shop, Eating Place or Pharmacy related thereto, Personal Services, and Professional Services in an R-4 District shall be located upon lots adjacent to or immediately across a street or public right-of-way from a 'C' District or upon lots adjoining a legally permitted use other than a one or two-family dwelling.

those uses not specifically listed or defined in the categories of permitted uses or special exceptions shall not be permitted. Accordingly, by the ordinance itself, permitted uses and special exceptions both fall within permitted uses. The difference being that special exceptions are permitted uses that are qualified and in this case must comply, among other requirements, with Section 307 of the ordinance. Section 307 defines when a special exception would be permitted and therefore must be taken in its broadest sense and the landowner given the benefit of the least restricted use and enjoyment. Further, where definition is lacking, interpretation must be applied according to the common and approved usage. Brunner v. Zoning and Hearing Board of Upper Makefield Township, 12 Pa. Cmwlth. 109, 315 A.2d 359 (1974). . . . Applying these legal precepts to the present case, this court has no recourse but to construe the meaning of 'legally permitted use' as one that is a permitted use or one that is allowed to exist by provision of the Zoning Ordinance or by compliance with the zoning provision becomes a permitted use such as a special exception. Section 208 of the ordinance is consistent with this interpretation and in fact refers to special exceptions as permitted uses.[3]

We grant that, in technical zoning jargon, "permitted use" usually refers only to uses allowed absolutely and unconditionally. However, Section 307 here does

[3] Strictly speaking, Section 208 does not expressly categorize special exceptions as "permitted" by way of definition; however, that section implicitly considers special exceptions to be "permitted uses" in that it includes both enumerated "permitted uses" and enumerated "special exceptions" under the single section heading of "Permitted Uses."

not say "permitted use", but, rather, uses the phrase "legally permitted use", an apparently broader class than those "permitted uses" enumerated in Section 208. Thus, "legally permitted use" suggests not only uses permitted absolutely by designation, but also uses "permitted" conditionally—but none the less legally —pursuant to administrative process.

Objectors also contend that the board properly denied Kopelman's application because his property abuts several occupied single-family dwellings, urging us to interpret Section 307 to preclude special exceptions uses on lots which adjoin one or two-family dwellings without regard to the nature of any other adjacent permitted use. We decline to do so. A fair reading of Section 307 requires only that the adjacent legally permitted use, which is to qualify the subject tract for a special exception, cannot itself be a one or two-family dwelling.

Finally, objectors contend that they fulfilled their duty to present evidence sufficient to establish the proposal as unduly detrimental to health, safety or general welfare. *Bray v. Zoning Board of Adjustment*, 48 Pa. Commonwealth Ct. 523, 410 A.2d 909 (1980).

Although only one member of the board's majority expressed traffic considerations as a basis for refusing the application, objectors put their greatest stress on the position that purported abnormal traffic patterns which may result from the restaurant uses provide sufficient justification for denying the special exceptions. We disagree, and adopt Judge LOUGHRAN's analysis.[4]

---

[4] On this point, Judge LOUGHRAN stated in his opinion:

An examination of the testimony and other matters presented to the Board reveals that there was no evidence presented to show that any increase in traffic was of such character to bear a substantial relation to the health and

Further, much of the abnormality propounded by objectors is premised on the assumption that drivers will use the restaurants' parking areas as illegal shortcuts and will ignore directional restrictions when actually patronizing the businesses. Possible driving violations are not a natural effect of the use, and are not relevant considerations in proceedings under a zoning ordinance. *See VanSciver v. Zoning Board of Adjustment,* 396 Pa. 646, 656, 152 A.2d 717, 723 (1959).

Accordingly, we affirm the common pleas court.

ORDER

AND Now, this 12th day of December, 1980, the September 10, 1979 order of the Court of Common Pleas of Westmoreland County, at No. 159 of 1979, is affirmed.

---

safety of the community. When a Petitioner seeking a special exception shows that the proposed use is allowable under the terms of the ordinance, there is no burden on the Petitioner to show that the use would not damage the health, safety, and morals of the community. This burden is placed upon any protestant. Lower Merion Township v. Enokay, Inc., 427 Pa. 128, 233 A.2d 883 (1967). . . . A decision to permit a special exception within the ordinance reflects a legislative judgment that a degree of impact will necessarily flow from the granting of a special exception; and if it is not shown that that impact will materially affect the public interest, the use should be permitted. An increase in traffic flow standing alone is not sufficient to refuse a special exception. The traffic increase must be of such a nature and character that it bears a substantial relation to the health and safety of the community. Lower Merion Township v. Enokay, Inc., supra.

An examination of the record and testimony in this case reveals that the subject property is located across from commercial areas whether the same be zoned commercial or existing by reason of nonconforming use, variance or special exception. It is clearly pointed out in the testimony that the traffic flow exists because of that commercial area and that the proposed use would not contribute to the traffic but draw from it.