## Utility Constructors, Inc. v.
## Zoning Hearing Board of Sadsbury Township

*Paul D. Shafer, Jr.,* for plaintiff. ·

*Stephen Toole,* for the Zoning Hearing Board of Sadsbury Township.

*E. Max Weiss, Mary Ann Kirkpatrick,* for intervenors Home Owners Association.

*William Jorden,* for intervenors Briley.

THOMAS, *P.J.,* August 4, 1982—The applicant, Utility Constructors, Inc., is the owner of 87 acres of undeveloped land adjoining Conneaut Lake. It hopes to develop the land into a travel trailer park. Homeowners in the vicinity do not want a travel trailer park there. The zoning hearing board denied Utility's application for a travel trailer park and the matter is before the court on Utility's appeal from that decision.

## FACTS

Utility's land was originally zoned as general commercial and seasonal residential. On January 18, 1980, Utility submitted a zoning amendment

application to the township requesting a change in the zoning classification to resort commercial. The purpose of the request was to permit a travel trailer park as a special exception use. After several heated hearings, court resolution of some procedural shortcomings[1] and legal maneuvering, the Board of Supervisors rezoned the land to Resort Commercial on June 17, 1981 (Ordinance No. 139-1981). Allowable uses in the Resort Commercial district include travel trailer parks as a special exception use.

On September 1, 1981, Utility applied for a permit for a travel trailer park. The zoning officer denied the permit and hearings were then held before the Sadsbury Township Zoning Hearing Board.

The zoning board held a lengthy hearing on October 28, 1981, a brief hearing November 13, 1981, and a final meeting December 7, 1981, to announce its 34 findings of fact and two conclusions of law, listing the reason for *denying* the Application for Special Use as a Travel Trailer Park.

Section 802 of the Sadsbury Township Zoning Ordinance[2] covers travel trailer parks and consists of three pages of single spaced type, spelling out in considerable detail all the requirements that must be met in erecting a travel trailer park as a special exception to satisfy the ordinance and zoning board.

We note initially, the record in this case is rather cumbersome and complex as, apparently by agreement of counsel, the initial hearing before the township supervisors held February 26, 1980, when the request for a zoning change by Utility was presented to the board, was incorporated into the zoning

---

1. See our opinion in Conneaut Lake Homeowners, et al. v. Sadsbury Supervisors, 17 Crawford L. J. 115 (1980).

2. Copy submitted to court at argument and now numbered Court Exhibit 1 and made part of the record.

board's record with the same force and effect as if the pro and con testimony of the zoning change request to allow a travel trailer park had been repeated again 20 months later before the zoning board.[3] Additionally, we note minutes of Township Planning Commission meeting held October and February, 1980, appearing as Homeowners' Exhibits 5, 6, and 7 (14 pages). They were objected to. We have read them and reluctantly rule them admissible as part of the record in this case, noting, however, that many of the statements are non-conclusory, self-serving opinions or inquiries and are not very helpful in establishing facts. Thus, the record consists of some 130 pages of zoning board testimony, 99 pages of previous testimony before the Supervisors, 14 pages of Planning Commission minutes, two maps and some 13 other exhibits. We have laboriously read it all as well as some 33 pages of excellent briefs.

Some of the testimony at the Supervisors' hearing consisted of statements, opinions, questions and innuendos posed by interested local citizens and, while interesting, did not generally establish proven facts or statistical trueisms useful to establish a series of facts from which could flow reasonably accurate conclusions of either fact or law.

Changes in zoning ordinances spawn citizen interest and the resultant outpouring of interest frequently results in a strained demonstration of

---

3. The delay resulted from the procedural court ruling of August 27, 1980, previously noted in footnote No. 1, finding the Supervisors had not given the Sadsbury Township Planning Commission sufficient time to study and recommend before the Supervisors approved the going change. We invalidated the amendatory ordinance and ordered further study by the Planning Commission before reconsideration of the proposed change by the Supervisors.

democracy in action. Zoning laws and changes thereto enacted by the legislative branch of a local government invite appeals to the judicial branch and, with the exception of routine criminal cases, probably generate more pages of judicial opinion than any other phase of the law.

Thus, from the volumes of decisions and interpretation of statutes have evolved some legal principles to guide litigants and courts in arriving at decisions in the zoning field. We enumerate some of those principles.

## BURDEN OF PROOF

An applicant (here Utility) has the burden of initially presenting evidence to the zoning board which shows that their proposal (a travel trailer park) complies with the terms and conditions of the zoning ordinance covering the subject matter at issue (here section 802 covering travel trailer parks). This rule means that Utility must carry the burden in showing its proposal complies with the objective requirements of section 802.

The important characteristic of a special exception is that the elected representatives of the local citizenry, i.e., the township supervisors, permit an exception to the general zoning classifications *if* the applicant brings his proposal within the four corners of the strict rules established for the particular exception — here a travel trailer park.

Once the applicant meets his burden of showing his proposal is permissible as being in compliance with the ordinance guidelines, then *it is presumed* that the proposal is consistent with the promotion of the health, safety and general welfare of the area.

If the applicant meets this burden and acquires this presumption, then the persuasive burden shifts to the *objectors* and they assume the burden of

showing by credible evidence that the proposal *is* detrimental to the public health, safety and welfare of the area.

For a lengthy discussion of the above principles, see the rather complex language of Bray v. Zoning Board of Adjustment, 48 Pa. Commw. 523, 410 A.2d 909 (1980).

## ADVERSE IMPACT PRINCIPLE

In order to refuse a request for a special exception by virtue of its adverse impact on the surrounding community, the zoning board must find from all of the evidence that there would be *a high degree of probability* that the proposed trailer park would adversely effect the health, safety and welfare of the Sadsbury Township area. See Foster Grading Co. v. Venango Twp. Zoning Board, 49 Pa. Commw. 1, 412 A.2d 647 (1980).

Most special exceptions, by their very nature, are bound to have some effect on the surrounding area and this effect was presumptively weighted and considered by the residents speaking through their elected representatives when the Supervisors permitted the zoning change. Thus, the degree of injury to the area necessary to support a denial of the proposal by the zoning board must be *greater* than the average anticipated effect normally flowing from such a proposal. See Kopelman v. Zoning Hearing Board, 55 Pa. 306, 423 A.2d 761 (1980).

Putting it another way, it must be assumed that when the supervisors changed the zoning ordinance to permit a travel trailer park, they considered the normally anticipated impact their decision would have on such matters as traffic flow, esthetic considerations, impact on water and sewer facilities, lake use, the impact of an increased transient popu-

lation, etc. Since these and other matters were pointed out to the supervisors, argued pro and con, and considered by them in allowing the amendment, the zoning board should proceed to their decision knowing these factors were considered by the Supervisors and only when they are convinced that adverse factors will impact on the area to a degree greater than that contemplated by the supervisors, should they veto the legislative decision made by the supervisors.

## NONCOMPLIANCE WITH REGIONAL COMPREHENSIVE PLAN

The zoning board keyed its decision to reject the proposal to two prime reasons — the second being "the proposed use is not compatible with the Regional Comprehensive Plan. The proposed use is not in keeping with the overall purpose of the Sadsbury Township Zoning Ordinance."

Thus, this appointed *administrative* board took it upon itself to assume a legislative role and in effect overrule a legislative decision (i.e., a needed change in the zoning ordinance) made by the elected Board of Supervisors that appointed them. It would make a mockery of our democratic representative system of government if the elected supervisors' decision could be countermanded or "second guessed" by non-elective boards and commissions appointed to carry out administrative duties within the policy guidelines established by the considered judgment of elected township officials.

Comprehensive long range regional plans are not truisms engraved in stone that were so brilliant in their original conception that they are immune to change for all time. If, in the judgment of the supervisors, a zoning plan created many years ago needs

amendment in view of new needs, changing recreational patterns or innovative development, they have the right and duty to make zoning changes to meet current needs — and once said policy change is made, the appointed zoning board may not reject a proposal for a special exception on the basis that the zoning board disagreed with the decision of the supervisors that such change was needed. Thus, our system of government does not permit the power of an administrative board to thwart the clear intent and purpose of a duly elected legislative body and our decisional law so holds. See Kahn v. Lower Providence Township, 90 Mont. L.R. 334, 1969.

## SCOPE OF COURT REVIEW OF ZONING BOARD DECISIONS

A court, on appeal, must limit its inquiry to a determination of whether or not the zoning hearing board's findings of fact and conclusions of law are supported by substantial evidence and whether or not there has been an error of law or abuse of discretion. Hanlen v. State College Zoning Hearing Board, 60 Pa. Commw. 190, 430 A.2d 1236 (1981).

## DISCUSSION

With these principles as guidelines, we have reviewed the reasons the zoning hearing board rejected Utility's application for a permit and reverse the board's decision and find that there was insufficient evidence to warrant a refusal of the permit.

The key testimony was that of the professional engineer, Charles E. Stiles, who designed the plot, acted as its advocate for the owner and was subjected to lengthy direct and cross-examination on the impact the park would have on the area. The testi-

mony clearly indicates it is an engineeringly sound plan and while it will change the appearance of the area and perhaps traffic flow and possible lake use in the future to some degree, its impact on the area would not be of such severity as to have a marked influence on the health, safety and general welfare of the area.

Naturally, nearby residents would prefer that only quiet single residential homes be erected in this area, but zoning decisions must be made in consideration of changing recreational and living patterns and attempt to develop a plan that enhances the entire area — not just one that pleases nearby neighbors.

We discuss what seem to be the major reasons given by the board for its decision:

*No. 10* — The proposed site of the travel trailer park has unobstructed access to Pennsylvania Route 618. It is in excess of ten acres and has adequate frontage along Route 618; however, the design of the entrance could obstruct the view of those persons traveling west onto Route 618 while vehicles are traveling east into the park.

This conclusion was arrived at by the board in spite of the fact that Stiles testified he followed an optimum design plan mandated by the Department of Highways for entrances to large shopping malls. We cannot conceive that the entry and exit way with central guardhouse and 50 parking spaces could be a controlling factor in the decision when the engineer testified to its adequacy based on his experience and no authoritative contra testimony was heard.

*No. 13* — The proposed Conneaut Lake Shore Club statement issued by Applicant indicates an intention to construct items not covered in the travel trailer park proposed plan.

Apparently Utility has an undeveloped plan to form an association of persons who would use the park under the name of Conneaut Lake Shore Club.[4] This proposal would even be more restrictive in some usage aspects than section 802 of the Ordinance. The testimony revealed possible future plans for a swimming pool in the park, ball fields, playgrounds, sauna, hiking trails, shuffleboard courts, childrens' wading pool and other usual recreational area accruements.

The board's objection in this area and its reason for denying the permit is that these in futuro, uncertain refinements and additions make Utility's present plan incomplete and until the board sees a complete plan of what will eventually occupy the land, the proposal is incomplete and should be rejected.

We give little weight to this posture. We cannot conceive that a developer must be clairvoyant to the extent that he must put everything in his application and plan that he hopes to be able to finance in the future as a logic development to his park. It must be remembered that future changes in land contour, intrusion into the lake for dock construction or boat launch facilities, construction of buildings or other significant improvements will call for permits from various township or state agencies and if their construction menaces the health, welfare or safety of the people in the immediate area or is not in compliance with the letter and spirit of section 802, no permit will be issued. We see no merit to the rejection of the application for the reason stated in No. 13.

*No. 15* — The Applicant proposes some sort of ownership of said lots.

---

4. See Exhibit H-1.

This reason apparently keys around the testimony of Mr. Lynn Summers, owner of Utility (Supervisors' hearing, page 44), wherein he testified it was a proposed plan that users could buy a membership in the facility which would give them an *undivided* 1/500th interest in the park and would require compliance with recorded restrictions and compulsory membership in an "association" known as the Conneaut Lake Shore Club. The member would not own nor could he claim rights to any particular lot and during his stay, could have a non-priority selection of lots, none of which he could occupy in excess of two weeks. A deed would evidence membership but only give the grantee an undivided interest in the land and membership in the association with attendant duties and privileges (page 49). Section 802 of the Zoning Ordinance provides that the lots "shall be rented by day or week and the length of occupancy is limited to thirty days." Utility's allowed stay would be only for two weeks or less. The obvious thrust of the ordinance was to prevent long term occupancy of any given lot and to prevent ownership of a lot by an individual so he could park his vehicle there and become a year round resident. Utility's plan is even more strict and whether the "no more than thirty days occupancy" is accomplished by a written or oral lease, use permit or an undivided interest deed concept is merely a matter of semantics and does not constitute a reason for board rejection as Utility's plan clearly is more restrictive in preventing "permanent setters" than the Ordinance requires.

*No. 17* — No loading will occur on any public right-of-way; however, parking and maneuvering may occur on public right-of-way Route 618 at the entrance, as the entrance design does not permit

enough space to accommodate delays on entry into the park and the consequent traffic congestion.

This is totally unsupported by hard evidence and is rebuted by testimony of the design engineer. The board apparently decided on its own to assume the expertise of a traffic engineer and concluded that imaginary parking problems, unskilled travel trailer operators, an inadequately designed entry and exit, and the lack of parking and maneuvering space would create such traffic congestion as to make the proposal a serious safety hazard. This conjecture is unsupported by any credible evidence and cannot form a factual basis upon which to draw a conclusion of inordinate and dangerous traffic congestion problem.

*No. 19* — The space provided for parking, lodging and maneuvering is inadequate.

This is also unsupported by any law or expert testimony on the subject.

*No. 21* — The lots are so spaced, however, so that if more than one primary mover vehicle; for example, an automobile or truck, is used in connection with the camping activities of any particular camper, then vehicles will be within 15 feet of units.

The lots are to be 35 by 80 feet (2,800 square feet) and surely in that size area, an added vehicle can be parked so as to not violate the 15 foot "closeness" restriction. This reason is spurious as it is based on the premise that the board should reject the permit as it conjectures that the users are going to violate the park and Ordinance restrictions. If a violation occurs, the owner and township can see that the infraction is stopped. But the possibility that a restriction might at times be violated is an insufficient reason to reject the permit.

*No. 24* — The creation of proposed travel trailer park will cause traffic congestion on Aldinia Drive

which congestion will create a hazard for the residents residing on said street.

We have no sound estimates of how many campers would use Aldinia Drive rather than use the wider, more convenient entrance via state Route 618. If Aldinia Drive were to develop into an overused alternate route for camper vehicles, the township could adopt a restriction ordinance for this township road precluding its use by through traveling travel trailer vehicles. We think it likely too, that were use of this narrower township road by travel trailers become a problem, the owner of the park and its association could adopt appropriate rules precluding users from taking their travel trailers over this route in entering or leaving the park.

While this fact presents a theoretical traffic concern, we cannot conceive it as being the basis of rejection of the permit as creating an unsolvable traffic problem detrimental to the safety and welfare of the area residents.

*No.* 25 — Route 618 may need reconstruction if usage were increased by activity at the proposed travel trailer park.

This is another conjectural possibility unfounded by any testimony. A letter to the Sadsbury Township Planning Commission from the Crawford County Planning Commission dated October 17, 1980, notes an average daily traffic volume decline on Route 618 between 1964 and 1978 of 1,200 vehicles per day (Homeowners' Ex. H-4). We cannot conceive that this park would increase traffic volume even remotely close to what it was 18 years ago. Further, deterioration of state highways from excessive use is a concern of the Department of Transportation and absent an expert opinion that traffic flow generated by the park would cause such public highway deterioration that an immediate safety haz-

ard would be created, we reject the board's reasoning on this finding of fact.

*No. 31* — There are no other areas of recreation available to users of the proposed campgrounds than Conneaut Lake.

We are frankly puzzled by this reason and are not sure we understand it correctly.

Crawford County, and the Conneaut Lake area in particular, continually publicize themselves as a great recreation and outdoor area. Apparently the board is saying that when travel trailer users stay at the park they will have nothing to do but swim and boat on Conneaut Lake and thus overuse the lake to the detriment of the health, safety and welfare of other users and residents in the area. One travel trailer park planner and land consultant (Mr. Bill LaVorio) testified that for camps of this size (500 lots), the normal summer occupancy rate is only 20 percent, going to 40 to 50 percent on holiday weekends (Supervisors' hearing, page 62). He further testified that contrary to popular opinion, recreational vehicle campers are not generally boat owners and claimed to have national statistics that only 14 to 17 percent of those campers using recreational facilities are boat users.

We also point out that with three golf courses, a famous amusement park, a waterslide, golf driving range, Pymatuning Lake and Park, and marvelous hunting within a few minutes drive of the travel trailer park, we cannot conceive that the board felt that campers would be hard pressed to find recreation other than on or in the waters of Conneaut Lake.

*No. 32* — The Regional Comprehensive Plan calls for the development of land east of Route 618 as residential land.

We have already noted that a change in the Re-

gional Comprehensive Plan was the prerogative of the supervisors and that while the zoning board may not have agreed such change was desirable, they are "stuck with it" and cannot make this action by the supervisors their basis for rejecting the application.

Conclusion of Law (a) is a repeat of a number of findings of fact already discussed addressing the board's concern with loading, maneuvering and parking within and without the park.

Conclusion of Law (b) finds as a matter of law that the application is not compatible with the Regional Plan and the overall purpose of the Zoning Ordinance. We discussed this matter previously and find no need to repeat our rejection of this reason.

For the foregoing reasons, we find the zoning hearing board's decision to be outside established legal precedent. We find the board's finding of fact and conclusions of law unsupported by substantial evidence in the volumnous record before us. We find Utility has met its burden of proof. We find no compelling evidence to warrant an express or implied legal finding by the board that a travel trailer park in this area would adversely impact the health, safety and general welfare of the immediate or surrounding area.

Our decision in no way should be interpreted as being critical of the board in the performance of their duties. Their patience, diligence and long hours in hearing and reading this cumbersome record evidences their dedication in performing this thankless civic responsibility. The permit should be granted and we will so order.

## ORDER

And now, August 4, 1982, the appeal of Utility Constructors, Inc., is sustained and the Zoning

Hearing Board of Sadsbury Township is directed to issue to Utility Constructors, Inc., a special exception use permit to construct a travel trailer park in accord with its submitted plans and in compliance with the Sadsbury Township Zoning Ordinance as amended.