**FATHER RYAN HIGH SCHOOL, INC., and James D. Niedergeses, Bishop of the Roman Catholic Diocese of Nashville, Plaintiffs–Appellees,**

v.

**The CITY OF OAK HILL, acting By and Through the OAK HILL BOARD OF ZONING APPEALS, Defendant–Appellant.**

Court of Appeals of Tennessee, Eastern Section, at Nashville.

Nov. 16, 1988.

Permission to Appeal Denied by Supreme Court July 3, 1989.

John W. Wagster, Nashville, for defendant-appellant.

John P. Long, Adams, Taylor, Philbin, Pigue & Marchetti, and Thomas V. White, Tune, Entrekin & White, Nashville, for plaintiffs-appellees.

Jeffrey A. Greene, Harwell Martin & Stegall, Nashville, amicus curiae on Behalf of Oak Hill Taxpayers for Residential Protection.

George A. Dean, Parker, Lawrence, Cantrell & Dean, Nashville, amicus curiae on Behalf of Walter Griffin.

## OPINION

FRANKS, Judge.

After the City of Oak Hill and its Board of Zoning Appeals refused to issue a conditional use permit to plaintiff for the construction of a high school, the Chancery Court of Davidson County, responding to a common law writ of certiorari by plaintiffs, ordered the city to issue the permit and defendant city seeks a reversal of that judgment in this court.

We adopt the history of the case from the background analysis of the Oak Hill Board of Zoning Appeals:

Father Ryan High School appeals from the denial by the City Manager of Oak Hill of its application for a conditional use permit to operate a private high school on a tract located east of Franklin Road zoned "Residential B" by the City of Oak Hill. Father Ryan's application was filed with the City on August 3, 1987, and denied August 31, 1987. Father Ryan filed its appeal to this Board September 8, 1987. In accordance with the zoning ordinance, a public hearing was held on October 12, 1987, at which representatives of Father Ryan and the public participated.

Father Ryan proposes to construct a high school for grades 9–12 with an enrollment of from 900–950 students. The site plan submitted with the application reflects a series of buildings housing

classrooms, a dining facility and a library located adjacent to a water retention pond, a separate gymnasium facility (with a seating capacity for up to 1,500, according to the traffic study submitted with the application) a running track enclosing a football practice field, other athletic fields, tennis courts, and paved parking areas.

The proposed site is a 40–acre tract located east of Franklin Road. It is bounded by immediately adjacent residential neighborhoods to the west and south, by Interstate Route 65 to the east, and an undeveloped tract to the north. Father Ryan proposes that all traffic to and from the school be routed on Norwood Drive, a dead end street which extends from Franklin Road to the west edge of the property. There are 8 homes located on Norwood Drive, two of which are part of the proposed site and would be removed upon completion of the construction. Father Ryan further proposes that all construction traffic during the 12–14 month period of construction be routed on other streets serving the surrounding neighborhood which extend to the site, namely Morriswood Drive, Blevins Drive and Prescott Road.

. . . . .

At the public hearing, the majority of the citizens opposed construction of the school at the proposed site. Further, the overwhelming majority of written comments received by the Board have been opposed to the proposed school. Those opposed to the school have cited a variety of reasons, including the following: (1) inadequate access from the proposed site to Franklin Road; (2) safety concerns resulting from increased traffic generated by the school affecting both the immediately adjacent neighborhood and the neighborhood west of Franklin Road; (3) increased noise levels from traffic and extracurricular activities; (4) the adverse effect on property values; (5) inadequate parking on-site; and (6) problems of access for emergency vehicles to the surrounding neighborhoods given increased volumes of traffic.

The Board of Zoning Appeals in its decision stated:

Operation of a private school is a permitted use in a Residential B District, provided other requirements of the zoning regulations are satisfied.

The Board then, after emphasizing the provision in the ordinance that requires the board, in reviewing the action of the city manager to make an affirmative determination "... that the establishment or operation of such school is consistent with the general welfare, safety, morals and health of the community after taking into consideration the letter and spirit of this ordinance" said:

The Board is bound by this requirement of the zoning ordinance. Unless this Board is able to make such a finding, a permit may not be granted. Accordingly, considerations such as the effect the proposed school will have on traffic in the neighborhood, whether safety will be adversely affected, and other impacts on the general welfare of the community are all relevant and appropriate considerations to be taken into account by the Board.

The Board is unable to determine that construction and operation of Father Ryan High School on the proposed site is consistent with the general welfare and safety of the community....

It is clear the Board of Zoning Appeals, in making its decision, focused almost exclusively on the quoted provision of the ordinance. The chairman of the board, in preliminary remarks at the time of the public hearing, told the audience:

If you're wondering why we're here, let me tell you that the City founders liked what we were going to do so much they put it in our ordinance twice so they really liked it and it says, "The Board of Zoning Appeals may permit a private school to be established or operated under a determination that the establishment or operation of such school is consistent with the general welfare, safety, morals and health of the community after taking into consideration the letter and spirit of this ordinance." That is

cited twice in our ordinance so they really liked it.

Upon review, the chancellor filed a memorandum opinion and held:

The City of Oak Hill's authority to enact zoning regulations is pursuant to T.C.A. § 13–7–201, *et seq.* and to create a board of zoning appeals is pursuant to T.C.A. § 13–7–205, *et seq.* Pursuant to T.C.A. § 13–7–207, the Board of Zoning Appeals' powers include the power to hear and decide requests for issuance of special exceptions or conditional use permits, and the power to issue variances from the zoning ordinance.

Section 17 of the Zoning Regulations of the City of Oak Hill, Tennessee governs the location of private schools within the city.... Upon review of ... Section 17 of the Zoning Regulations, it is apparent that private schools are a special exception or conditional use in the City of Oak Hill. Thus, the petitioner must comply with each of the requirements listed in Section 17 in order to obtain the conditional use permit for the construction of Father Ryan High School....

The Court finds, based on the evidence, that the petitioners have satisfied the requirements of Section 17 of the Zoning Regulations in the following manner:

Subsection 2(a). Father Ryan is a nonprofit educational institution, and it has a general welfare charter from the State of Tennessee.

Subsection 2(b). Father Ryan is exempt from federal, state and local government taxation.

Subsection 2(c). Father Ryan is graded by grades 9 through 12, and it is a member of the Southern Association of Colleges and Schools.

Subsection 2(d). There is compliance with the ordinance as to construction, maintenance, health and safety.

Subsection 2(e). The parking requirements of the ordinance have been satisfied.

Subsection 2(f). Father Ryan is not a prohibited school under this section.

Subsection 3. Father Ryan has satisfied the requirements as to tract size, sewerage facilities, review and approval of plans and compliance with the Tennessee State Board of Education facilities requirements.

Subsection 4. The medical requirements have been satisfied.

Subsection 5. The parking requirement has been satisfied.

.    .    .    .    .

Since the petitioners have satisfied all of the requirements or conditions of the zoning ordinance, the Zoning Board must issue the requested conditional use permit.

Ordinance 53–9(7) singles out private schools for special treatment before the Board of Zoning Appeals as follows:

In the event the City Manager is of opinion that a permit to operate a private school should not be granted, it shall be his duty to deny the application, in which event the applicant may appeal to the Board of Zoning Appeals of Oak Hill in accordance with the appeal procedure now provided in the Oak Hill zoning ordinance.

The Board of Zoning Appeals may, in a specific case, after public notice and hearing, and subject to appropriate conditions and safeguards to be prescribed by the Board, determine and vary the application of the provisions of this ordinance, in harmony with their general purposes and intent, as follows:

Permit a private school to be established or operated, upon a determination that the establishment or operation of such school is consistent with the general welfare, safety, morals and health of the community, after taking into consideration the letter and spirit of this ordinance....

Defendant argues the chancellor apparently held to be invalid that portion of the Oak Hill zoning ordinance which requires the Board of Zoning Appeals to make "a determination that the establishment or operation of such school is consistent with the general welfare, safety, morals, and health of the community, after taking into consid-

eration the letter and spirit of this ordinance" and essentially predicates its appeal on the propriety of the board's determining the merits of the application consistent with this requirement.

As to the scope of review, *Davison v. Carr*, 659 S.W.2d 361, at 363 (Tenn.1983), states:

> Common law certiorari is available where the court reviews an administrative decision in which that agency is acting in a judicial or quasi-judicial capacity. T.C.A. § 27–8–101 provides:

> > The writ of certiorari· may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy.

We conclude, for reasons hereafter set forth, that the board "has exceeded the jurisdiction conferred".

T.C.A., §§ 13–7–206, 13–7–207, set forth the jurisdiction and powers of a board of zoning appeals:

> § 13–7–206—(a) The zoning ordinance may provide that the board of appeals may, in appropriate cases and subject to the principles, standards, rules, conditions and safeguards set forth in the ordinance, make special exceptions to the terms of the zoning regulations in harmony with their general purpose and intent. The chief legislative body may also authorize the board of appeals to interpret the zoning maps and pass upon disputed questions of lot lines or district boundary lines or similar questions as they arise in the administration of the zoning regulations.

> (b) Appeals to the board of appeals may be taken by any person aggrieved or by any officer, department, board or bureau of the municipality affected by any grant or refusal of a building permit or other act or decision of the building commissioner of the municipality or other administrative official based in whole or part upon the provisions of this ordinance enacted under this part and part 3 of this chapter.

> § 13–7–207—The board of appeals shall have the following powers:

> (1) To hear and decide appeals where it is alleged by the appellant that there is error in any order, requirement, permit, decision, or refusal made by the municipal building commissioner or any other administrative official in the carrying out or enforcement of any provision of any ordinance enacted pursuant to this part and part 3 of this chapter;

> (2) To hear and decide, in accordance with the provisions of any such ordinance, requests for special exceptions or for interpretation of the map or for decisions upon other special questions upon which such board is authorized by any such ordinance to pass; and

> (3) Where, by reason of exceptional narrowness, shallowness or shape of a specific piece of property at the time of the enactment of the zoning regulations, or by reason of exceptional topographic conditions or other extraordinary and exceptional situation or condition of such piece of property, the strict application of any regulation enacted under this part and part 3 of this chapter would result in peculiar and exceptional practical difficulties to or exception or undue hardship upon the owner of such property, to authorize, upon an appeal relating to the property, a variance from such strict application so as to relieve such difficulties or hardship; provided such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and zoning ordinance.

The City of Oak Hill by enacting Ordinance 53–9 exercised its power to zone. "for the purpose of promoting the public health, safety, morals, convenience, order, prosperity and general welfare" of its citizens in establishing residential district and the uses therein permitted. The legislature, in providing for the establishment of a board of zoning appeals, did not confer this authority upon such boards under the enabling legislation, the exercise of which

would be legislative, as opposed to the quasi-judicial authority vested in the boards of zoning appeals.

The board's review of the city manager's refusal to issue the permit was quasi-judicial and we conclude the chancellor's review was appropriate.

In an excellent analysis of when a board of zoning appeals exceeds the jurisdiction conferred or is acting illegally, Judge Lewis, in *Merritt v. Wilson Cty. Bd. of Zoning Appeals*, 656 S.W.2d 846, 854–5 (Tenn.App. 1983) said:

> The Board of Zoning Appeals has neither the power to zone nor to amend the zoning ordinance. That power is in the county legislative body. T.C.A. §§ 13–7–101 and 13–7–105.
>
> Article VI, Section 3, of the Wilson County Zoning Ordinance sets forth comprehensive requirements for a group housing development. The Merritts' property was zoned R–2 which includes group housing. A review of this record discloses that the Merritts' property met all requirements under the ordinance for group housing and that the Board did not deny the application because of failure to meet the requirements of the ordinance.
>
> The application was denied because of a "lack of ingress/egress to accommodate a 250–unit apartment complex at this site." A denial of a zoning permit which meets all the requirements of the ordinance when there is no valid ground for denial is arbitrary and unreasonable. 101 C.J.S. *Zoning* § 224 (1958).
>
> This Court, in *Harrell v. Hamblen County Quarterly Court*, 526 S.W.2d 505 (Tenn.App.1975), affirmed the judgment of the Chancery Court which held that the Hamblen County Quarterly Court and Hamblen County Planning Commission had acted arbitrarily in denying plaintiffs a permit to construct a mobile home where plaintiffs had fully complied with requirements of the zoning ordinance. *See also, Sexton v. Anderson County*, 587 S.W.2d 663 (Tenn.App.1979).
>
> The Pennsylvania Supreme Court, in *Lower Merion Township v. Enokay,*

*Inc.*, 427 Pa. 128, 233 A.2d 883 (1967), held that it was error for the zoning board to deny a special exception where the proposed exception was allowable under the ordinance and ordinance requirements had been met. The Pennsylvania Court stated:

> A petitioner who seeks a special exception must show that the proposed use is allowable under the terms of the ordinance which permits special exceptions. [Citations omitted.] In the instant case, there is no serious dispute that the proposed use is allowable under the terms of the Ordinance. Having shown that the use is allowable, there is no burden on the petitioner to show that the use would not damage the health, safety and morals of the community.
>
> The Board concluded that the health, safety, welfare and morals of the community would suffer if the proposed use were permitted, because there would be a generation of new traffic which the road system in the area could not bear. The Board stated: ".... the road system adjacent to the property is critically overcrowded and that the (construction of the building) would cause a serious, additional traffic burden." ...
>
> [A]n increase in traffic, standing alone, does not constitute a sufficient reason to refuse a property owner the legitimate use of his land.

*Id.* at 131–132, 233 A.2d at 885.

Woodlake further contends that the Board of Zoning Appeals was acting within its jurisdiction in denying the application for "lack of ingress/egress." Its argument, in effect, is that even though the Merritts' property may have met all specific criteria for a Group Housing Development, the Board can deny an application under the purposes clause of the Wilson County Zoning Ordinance because the general welfare could be affected if the permit were granted.

In rejecting this same type argument, Judge Sanders, writing for the Court in *Harrell*, stated:

The Appellants argue that this provision of the ordinance gives the Planning Commission the discretion to deny a permit at any place where, in their judgment, the general welfare of the community might be affected.

We cannot agree. Section 1 is the preamble of the ordinance. It is well settled in this state that the preamble of a statute or ordinance may be looked to in determining its construction but it is not a part of the controlling provisions of the ordinance. *Memphis Street Railway Co. v. Byrne,* 119 Tenn. 278, 104 S.W. 460 [1907]; *Queener v. Magnet Mills,* 179 Tenn. 416, 167 S.W.2d 1 [1942]; *City of Kingsport v. Jones,* 196 Tenn. 544, 268 S.W.2d 576 [1954].

It is obvious that the Planning Commission and the Quarterly Court denied the permit to the Petitioners because of the objection of adjacent property owners, which they were without authority to do. 101 C.J.S. Zoning, § 224.

Although these adjacent property owners may be justifiably concerned as to the adverse effect that may be had on the value of their property, this does not permit an administrative agency to deny an adjoining property owner the right to use his property for lawful purposes and not in violation of zoning or restrictions. *Application of Garden City Jewish Center,* 2 Misc.2d 1009, 155 N.Y.S.2d 523 [1956]; *Congregation Committee, North Fort Worth Congregation, Jehovah's Witnesses v. City Council of Halton City,* Texas Civ.App., 287 S.W.2d 700 [1956]. 'The grant or refusal of a permit is to a certain extent within the sound discretion of the board or official authorized to use it, but the discretion must be exercised reasonably, and if an applicant meets all of the requirements of the zoning regulations and there is no valid ground for denial of the application, the permit should be issued.' 101 C.J.S., *supra.*

The Law of Zoning and Planning Chapter 55, Section 3 says:

'So long as the application is in order and the proposed use of the property complies with applicable municipal ordinances or, where although not complying, the premises has a vested nonconforming status, the applicant is entitled to a permit, and it is the duty of the administrative officer to issue him one.'

*Harrell,* 526 S.W.2d at 508–509. *See also, Keiger v. Winston–Salem Board of Adjustment,* 278 N.C. 17, 178 S.E.2d 616 (1971).

*Accord: Brooks v. Fisher,* 705 S.W.2d 135 (Tenn.App.1985).

It is settled law that a board of zoning appeals' power or jurisdiction is limited in scope to that expressly conferred by statute. Yokley's *Zoning Law and Practice,* (4th ed. 1979) states:

The powers of a board of appeals are limited by statute. It is beyond debate, as attested by many decisions, that a board of appeals or adjustment may not exceed the powers placed in its hand by statute.

3 E.C. Yokley, *Zoning Law and Practice,* § 19–2, p. 195 (4th ed. 1978).

A municipality may not confer powers upon the board not granted by the enabling statute and such grant is *ultra vires* and void. *Bush v. City of Dover,* 260 A.2d 432 (Del.1969); *Clark v. Board of Appeals of Newbury,* 348 Mass. 407, 204 N.E.2d 434 (1965); *Farnsworth v. Town of Windsor,* 150 Conn. 484, 190 A.2d 915 (1963); *Noonan v. Zoning Board of Review of Barrington,* 90 R.I. 466, 159 A.2d 606 (1960); *Broach v. Young,* 100 So.2d 411 (Fla.1958); *Bringhurst v. Zoning Bd. of Appeal & Adjustment,* 198 La. 758, 4 So.2d 820 (1941).

The cases cited by appellant for the proposition that a board of zoning appeals may be delegated legislative functions do not address the issue of whether there was statutory authority conferring such powers on the reviewing agency.

In the instant case, the board's action in denying the permit was based upon

considerations beyond its statutory powers and was therefore illegal. The board, after correctly observing that "a private school is a permitted use in a residential B district, providing other requirements of the zoning regulations are satisfied", nevertheless concluded "the board is unable to determine that construction and operation of Father Ryan High School on the proposed site is consistent with the general welfare and safety of the community". The principal reasons given were "traffic problems", "traffic will increase on residential streets", "residents' concern about safety from the increase in traffic", "noise level from traffic" and "fears of diminished property values in the area". While these conditions are or may be inherent in construction and operation of any school, the City of Oak Hill took into account these considerations when it authorized the construction of schools in this zoning classification by promulgating the attending safeguards set forth in its zoning ordinances specifying under what conditions a private school could be constructed and operated within the zone.

If plaintiff complies with the conditions specified in the ordinance, its posture before the board is essentially the same as the applicants in *Merritt, Harrell* and *Brooks,* where denial was held to be arbitrary when the applicant had fully complied with the requirements of the zoning ordinance.

■ Only one ground advanced by the board as a basis for denial is based on the failure to meet a requirement of the zoning ordinance. The board stated:

In accordance with Section 5 of Ordinance 61–3, one acre of additional parking for each fifty (50) pupils of anticipated enrollment must be provided, or 19 acres of additional parking in Father Ryan's case. The rationale for such a requirement is to assure adequate off-street parking for school functions, so that vehicles are not parked along streets in the immediately adjacent neighborhood. Father Ryan has failed to demonstrate that open space on the proposed site satisfies this requirement.

The city contends the site plan presented by Father Ryan's architects does not "provide for an additional parking area based upon one (1) acre of land for each fifty (50) pupils of anticipated enrollment". The argument is essentially based upon a mathematical computation of the scaled site plan, which the city contends shows only slightly more than 16 acres dedicated to parking. The project architect, in his testimony before the board, testified the site plan provides for 520 paved parking spaces. He was then asked by a board member:

Q. Could you also address whether the minimum acreage in—area to be dedicated to parking has been complied with? ... I believe the sentence requires one acre of parking for every 50 pupils of enrollment. That's what I'm referring to.

A. ... That particular sentence does not state paved parking. It has no implications along that line. The way we address those kinds of problems, where if you look at the fields and the access to the fields, we feel like if the parking was required for any number of additional spaces, the fields would serve adequately for that and the number of fields—and I think it works up to be 20 acres, if I'm not mistaken, of fields and we have that many acres on the site of parking.

I can show you exactly where they are but it's breaking it out by numbers is a little difficult to do. I'm not counting in the ponds or the trees. I'm specifically pointing to the football fields and the existing parking that's there.

The witness was then asked to demonstrate from the site plan which the record indicates he did, and the board member then stated:

Allright. Just to make sure that we've got this clear, your reading of the ordinance, there's not a requirement of paved parking area, that that would be open space that could be dedicated to parking is your reading of how you gain compliance with that.

A. Yes.

Outside of the exhibit and the architect's testimony, there is no evidence, other than conclusions, as to whether this requirement has been met. The site plan includes some 30 acres of open land exclusive of the buildings to be constructed. The record, in our view, does not contain material evidence supporting the board's position on this issue. However, assuming, *arguendo*, during construction for whatever reason the school deviates from this requirement, the city is empowered under the enabling statutes and the ordinance to take whatever steps are necessary to insure compliance with the parking requirement.

For the foregoing reasons, we affirm the judgment of the chancery court and remand, with cost of the appeal assessed to the appellant.

GODDARD and ANDERSON, JJ., concur.